In re the **MARRIAGE OF Janice Marie BOLTON, Petitioner/Respondent,**

v.

**Edward Leroy BOLTON, Respondent/Appellant.**

No. 70244.

Missouri Court of Appeals, Eastern District, Division Four.

July 22, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 26, 1997.

Diekman & Leightner, James J. Leightner, Clayton, for appellant.

Summers, Compton, Wells & Hamburg, Richard H. Ulrich, Andrea L. Weiss, St. Louis, for respondent.

KAROHL, Judge.

Edward Leroy Bolton (Father) appeals from a March 15, 1996, judgment which modified a December 13, 1993 dissolution of his marriage with Janice Marie Bolton (Mother). The trial court increased Father's child support obligation for their younger son Michael, born December 29, 1979. The older son, Edward Jr., was emancipated before the modification. Father argues in his four points on appeal the trial court erred: (1) in its interpretation of the parties' unambiguous settlement agreement; (2) in permitting Mother's lawyer, who had withdrawn from the case immediately before the trial, to testify regarding issues in dispute; (3) in overstating Father's and understating Mother's income on its Rule 88.01 and Form 14 calculation; and (4) in ordering Father to pay Mother $250 for damages to an automobile used by Edward, Jr.

On December 13, 1993, a court dissolved the marriage. The dissolution decree incorporated the parties' settlement agreement. Prior to June 6, 1995, Father filed a motion to recover advances paid to Mother on the theory of monies had and received. On June 6, 1995, Mother filed a motion for an order of contempt against Father. Later, she filed a motion to modify and increase the amount of child support for their younger son. Father filed a cross motion to modify his child support obligation. On November 15, 1995, Father amended his monies had and received

motion to include a claim of breach of contract. The court consolidated and heard all the motions together.

After the hearing, the trial court first entered judgments on January 25, 1996. It modified the judgments on March 8, and March 15, 1996. The parts of the trial court's judgments that are relevant to Father's appeal include orders: (1) increasing child support for the unemancipated son from $625 per month to $1,108 per month, retroactive to October 1, 1995;[1] (2) Father pay Mother $250 for an automobile repair; (3) denying Father's prayer for monies had and received by Mother; (4) Father pay $752.45 per month to Mother as the total monthly house payment on the jointly-owned former family residence, until sold, and any increases on the monthly obligation on the note and deed of trust; and (5) increasing child support based on the court's calculation of both parties' income, derived in part by the inclusion of an average annual bonus for Father and the exclusion of Father's monthly payment to Mother as well as the income tax deductions for real estate taxes and interest on the residence she occupies with their children in accord with the property settlement agreement and dissolution decree.

Father's first point is the trial court erred in finding he is obligated to pay and Mother may retain all of the $752.45 per month he pays to her. She pays the mortgage holder on the note and deed of trust on their former residence, as well as any future increase in these payments. He argues this alters the terms of the parties' clear and unambiguous agreement and renders a provision of the parties' settlement agreement meaningless because she agreed to pay "all maintenance, taxes, insurance, and upkeep associated with said residence."

We review in accord with *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976). This standard has been consistently applied to divorce dissolution cases. *Mason v. Mason*, 873 S.W.2d 631, 633 (Mo.App. E.D.1994). The decree will stand unless it involves an erroneous declaration of the law. *Id.* Sec-

---

1. The child support for the older son was terminated due to emancipation status under the

terms of the settlement agreement and dissolution decree.

tions 452.325.2 and .5 RSMo 1994 recognize separation agreements as enforceable contracts. These agreements, once incorporated into a court's dissolution decree, can also be enforced by the courts, just like any judicial judgment. *In Re Marriage of Linnenburger*, 741 S.W.2d 872, 876 (Mo.App.1987).

Father argues the trial court misapplied the law in its enforcement of settlement agreement paragraphs 7.2(b) and (c). Paragraph 7.2(b) provides, in part, that "... Mother shall be *responsible* for all maintenance, taxes, insurance, and upkeep associated with said residence ..." (Emphasis added). Paragraph 7.2(c), states that "Father shall, however, be *responsible* and shall pay to Mother the monthly payments on the note and first deed of trust as described above (now $752.45) ..." (Emphasis added).

The parties refinanced the loan secured by a deed of trust on their martial residence on October 1, 1993, prior to the December 13, 1993 dissolution decree. The monthly payment associated with the note for principal and interest was $555.62. That amount increased to $752.45 when taxes and insurance were included. Father alleged he is entitled to recover the $196.83 difference. From December 13, 1993, through January, 1995, Father paid $752.45 per month to Mother. In January, 1995, Father realized he was paying not only the principal and interest on the note, but taxes and insurance as well. He argues the trial court order excuses Mother's contractual obligation to pay the taxes and insurance on the property, noting in particular that she has benefited from the use of the income tax deduction as if she was paying them.

■ Father contends he agreed to pay only the principal and interest on the note and deed of trust ($555.62), or in the alternative, to make available to Mother the amount of principal, interest, insurance, and taxes ($752.45), subject to reimbursement from Mother for taxes and insurance ($196.83). Mother responds Father is responsible for the principal, interest, insurance, and taxes on the property, and her "responsibility" was merely to see that the payment was made to the mortgage company. Both parties have argued the agreement is unambiguous.

Thus, a court must determine the correct interpretation of the settlement agreement provisions from their words alone, without the use of extrinsic evidence. "In contractual interpretation, the primary rule is to ascertain the intent of the parties and then give effect to that intent. When there is no ambiguity in the contract, the intent of the parties is to be gathered from [the contract] alone." *Marshall v. Pyramid Development Corp.*, 855 S.W.2d 403, 406 (Mo.App. W.D.1993). The trial court, however, does not maintain the power to modify property settlement terms of a separation agreement, once the agreement is incorporated into a dissolution decree. *Stark v. Thierjung*, 714 S.W.2d 830, 832 (Mo.App.1986).

■ A separation agreement is an integrated writing; each provision bears on the others. *In Re Marriage of Linnenburger*, 741 S.W.2d at 878. If a court were to enforce some of the terms of the agreement while ignoring others, the agreement may not only become imbalanced, but may also become an agreement not in accord with what the parties originally had intended it to be. *Id.* Thus, the terms of a contract must be read as a whole. *Village of Cairo v. Bodine Contracting Company*, 685 S.W.2d 253, 264 (Mo.App.1985). "Each term is construed to avoid an affect which renders other terms meaningless: a construction which attributes a reasonable meaning to all of the provisions of the agreement is preferred to one which leaves some of them without function or sense." *Id.*

■ Applying these rules, Mother's interpretation fails. "In interpreting contracts, courts presume that the words used are intended to have their natural and ordinary meaning." *Marshall*, 855 S.W.2d at 407. Mother approved and signed an agreement which provides she is "responsible" for *all* taxes and insurance associated with the residence she would continue to occupy with the two children until occurrence of an event agreed upon by the parties in the settlement. In the same sentence she agreed to be "responsible" for maintenance and upkeep. These activities are not compatible with her contention Father is obligated to pay the

taxes and insurance. Her argument simply ignores the plain meaning of paragraph 7.2(b). She contends the words "responsible" in paragraphs 7.2(b) and (c) have different meanings, where Father is "responsible" to pay, while Mother is only "responsible" to deliver payment to the holder of the deed and note of trust. The word in successive paragraphs, both involving the same subject, has the same meaning. Each party is "responsible" in the sense of the word "obligated."

■ We find the clear and unambiguous agreement is for Father to pay the full amount of the house payments, including principal, interest, taxes and insurance to Mother; Mother must make the payments on the joint obligation on the note and deed of trust; Mother will owe Father the total he advances and she uses to pay taxes and insurance no later than when the house is sold in compliance with the provisions of the settlement agreement. Since the parties failed to define what constituted elements for "monthly payments" in paragraph 7.2(c) but adopted the amount of $752.45, a total of principal, interest, taxes, and insurance, Father agreed to pay Mother, in monthly installments, the amount equaling all the above elements. There is nothing in the agreement that would support Mother's interpretation that she is entitled to retain Father's advances as her own and have the applicable income tax deductions as if she is using her own funds to pay the real estate taxes. If Mother is using Father's money to pay the taxes and insurance expense, then Father, not Mother, is "responsible" for the taxes and insurance. Paragraph 7.2(b) provides the opposite. The judgment denying Father's motion for monies had and received is reversed. We remand for a judgment for Father and to include a determination of when a judgment for reimbursement is due.

Father's second point is the trial court erred in its computations of both parties' income when it determined child support under Rule 88.01 and Form 14. First, Father argues the trial court erred when it found the monthly mortgage payment was not includable in the court's computation of Mother's income. Second, Father argues the trial

court erred when it averaged his last three annual bonuses to derive a number to be included in its calculation of his income. He offered evidence which the trial court did not accept, that there would not be comparable bonuses in the future.

■ Rule 88.01 directs a court, in determining the amount of child support, to consider all relevant factors, including the financial resources of the parents. Rule 88.01 is supplemented by Form 14, which provides directions for determination of income in order to calculate presumptively correct child support. Form 14 defines gross income to include income from all but certain excluded sources. The payments Father makes to Mother on the note and deed of trust on the family home and Father's work bonuses are not excluded sources. A maintenance award issued in a dissolution decree is excluded from Form 14 computations when that support is paid by Father to Mother. *Wagner v. Wagner*, 898 S.W.2d 649, 650 (Mo.App. E.D. 1995). Here, Mother specifically waived maintenance in the separation agreement and there was no maintenance ordered in the dissolution decree. Therefore, the trial court's finding the monthly payments were excludable because they were "akin" to maintenance was legally erroneous. However, the exclusions were not error because the elements of the payments are, in fact, not income.

■ The monthly payments Father makes to Mother are for principal, interest, taxes, and insurance. The taxes and insurance are not income for child support calculations. They are repayable to Father. The principal and interest components Father pays to Mother are committed to pay their joint debt until the house is sold. They are not income to Mother for the purpose of computing child support.

■ Father's claim the income tax benefits are "income" to Mother also fails. The income tax benefits to Mother are uncertain. They would be of no benefit if she used a standard deduction on her income tax return. The evidence did not support a finding of a fixed benefit which could be valued. Further, Form 14 income considerations involve

gross income. Father's proposed inclusions on Mother's income are net, not gross, in nature.

■ We find no error in calculating and including "bonuses as part of an average income unless there is evidence that such bonuses are unlikely to continue." *Sutton v. Sutton*, 801 S.W.2d 704, 706 (Mo.App.1990). Father offered testimony and exhibits in an attempt to show his upcoming bonus would be drastically reduced from those received in previous years. The trial court, however, averaged Father's past bonuses in its Form 14 child support computations. In reviewing trial court judgments in a court-tried case, due regard is given to trial court's determination of credibility of witnesses. Rule 73.01(c)(2). "Great deference is awarded the trial court in determining the witnesses' credibility due to their superior ability to view their demeanor while testifying." *Elliott v. Elliott*, 920 S.W.2d 570, 574 (Mo.App. W.D.1996). It was for the trial court to accept or reject the reliability and weight of a pattern of bonus income. We find no abuse of discretion or erroneous application of the law. *In re Marriage of Zavadil*, 806 S.W.2d 506, 511 (Mo.App. E.D.1991).

■ Father's fourth point is the trial court erred in ordering Father to pay Mother an additional $250 for repairs on a vehicle used by their son, Edward, Jr. Paragraph 7.5(3) of the parties' settlement agreement provides, "Father shall be responsible for all reasonable maintenance, repairs, license, and property tax on [the 1989 Ford Taurus] while [Edward Burton, Jr.] is pursuing an undergraduate degree in accordance with 3.9 of this settlement agreement." While he was still attending high school, Edward, Jr. was involved in an automobile accident. He was required to pay an insurance deductible of $500 when the automobile was repaired. Father gave his son $250 to help offset the repair expense. The trial court found Father owed Mother the remaining $250.

The clear language of the settlement agreement directly contradicts the trial court's order. Father's obligation with regard to providing a vehicle for his son was limited to use of the vehicle and repair of damage during Edward, Jr.'s undergraduate

schooling, leading to a degree. A duty to provide an automobile and pay for repairs before college may exist, but not by reason of the settlement agreement. We reverse the trial court's award of $250 to Mother for expenses related to a vehicle used by Edward, Jr. during high school.

We will not address Father's final point of error. It is moot. Since both parties acknowledged the settlement agreement was unambiguous, extrinsic evidence offered by Mother's former lawyer concerning interpretation was unnecessary and not admissible. The testimony Father objected to is not significant in this case.

We affirm the order increasing child support; we reverse the order Father pay for the automobile repairs. We reverse and remand Father's motion for a determination of when Mother is to account for and repay money had and received.

RHODES RUSSELL, P.J., and SIMON, J., concur.