**Robert J. McGOWAN, Petitioner/Appellant,**

v.

**Augusta A. McGOWAN, Respondent/Respondent.**

**No. ED 77767.**

Missouri Court of Appeals, Eastern District, Division Four.

March 6, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 19, 2001.

Alfred J. Rathert, Fenton, MO, for Appellant.

Jeffery Thomas McPherson, Michelle Suzanne House–Connaghan, Armstrong, Teasdale, Schlafly, Davis & Dicus, St. Louis, MO, for Respondents.

Mason W. Klippel, Clayton, MO, Guardian Ad Litem.

SULLIVAN, Judge.

Robert J. McGowan (Husband) appeals from a trial court Judgment of Dissolution of Marriage (Judgment). We affirm in part and reverse and remand with directions in part.

Husband and Augusta A. McGowan (Wife) married in September 1979. Husband and Wife have four children: A.M., born in November 1980, R.M., born in February 1982, K.L.M., born in May 1988, and K.R.M., born in June 1991. Husband and Wife separated in March 1999, and Husband filed a Petition for Dissolution of Marriage (Petition) in May 1999. In July 1999, Wife filed a Counter Petition for Dissolution of Marriage. The cause was heard on three separate days, two days in November 1999 and one day in January 2000, and the trial court entered its Judgment in February 2000. Subsequently, Husband filed a Motion for New Trial, which the trial court denied.

The Judgment dissolved the marriage of Husband and Wife, divided their property and debt, and provided Wife with sole physical and legal custody of their children, subject to Husband's reasonable rights of visitation. The trial court awarded child support to Wife according to the authorized child support guidelines, as well as retroactive child support. Neither party was awarded maintenance. The trial court also found that Husband had been physically and emotionally abusive to Wife and guilty of marital misconduct.

■ The standard for reviewing a judgment of dissolution is the same for reviewing any court-tried action. *Bullard v. Bullard*, 929 S.W.2d 942, 944 (Mo.App. E.D.1996). The judgment must be affirmed unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We view the evidence and the inferences therefrom in the light most favorable to the judgment and disregard all contrary evidence. *Endebrock v. Endebrock*, 916 S.W.2d 456, 457 (Mo.App. E.D.1996). Additionally, we defer to the trial court's determinations as to the credibility of witnesses. *Bullard*, 929 S.W.2d at 944. The trial court is free to accept or reject all, part, or none of the testimony of a witness. *Endebrock*, 916 S.W.2d at 459.

■ Husband raises fourteen points on appeal. His first three points address the correctness of the trial court's calculation of Husband's child support obligation. An award of child support is within the sound discretion of the trial court. *Bullard v. Briem*, 969 S.W.2d 880, 883 (Mo.App. E.D. 1998). We will not substitute our judgment for that of the trial court absent a manifest abuse of discretion, and we will

not disturb an award of child support unless the evidence is "palpably insufficient" to support it. *Id.*

■ In his first point, Husband argues that the trial court erred on its Civil Procedure Form 14 (Form 14)[1] by including in Husband's monthly gross income expense reimbursement of $450 from Husband's employer.[2] Husband asserts that expense reimbursement should not be included in gross income on Form 14.

Although the term "gross income" is not specifically defined, the directions for completion of Form 14 provide guidance as to what should be included in gross income:

> Gross income includes, but is not limited to, salaries, wages, commissions, dividends, severance pay, pensions, interest, trust income, annuities, partnership distributions, social security benefits, retirement benefits, workers' compensation benefits, unemployment compensation benefits, disability insurance benefits, veterans' disability benefits, military allowances for subsistence and quarters, and maintenance actually received.

> Overtime compensation, bonuses, ... and significant employment-related benefits may be included, in whole or in part, in 'gross income' in appropriate circumstances.

The comments for use for completion of Form 14 go on to provide that " '[i]ncome' for purposes of computing the presumed child support amount consists of a financial benefit or money received by a parent that could have a positive impact on the par-ent's ability to support the parent's children."

With this guidance, we conclude that Husband's expense reimbursement should not have been included in Husband's monthly gross income on the trial court's Form 14. Reimbursement is repayment or indemnification. Black's Law Dictionary 1290 (7th ed.1999). Indemnification is the action of compensating for loss or damage sustained, *Id.* at 772, as opposed to a benefit, which is profit or gain. *Id.* at 150. Husband testified that, in order to receive his expense reimbursement, he has to fill out a form indicating specific expenses that he has incurred for which his employer will provide reimbursement.

Thus, because Husband's expense reimbursement is not profit or gain, but rather compensation for loss due to employment-related expenses, and because he must document those expenses for which he seeks reimbursement from his employer, we find the trial court abused its discretion on its Form 14 by including Husband's expense reimbursement in his monthly gross income. Accordingly, Husband's point one on appeal is granted.

■ In his second point on appeal, Husband argues that the trial court erred on its Form 14 by not including in Wife's monthly gross income any overtime compensation and bonus.

The comments for use for completion of Form 14 provide that when determining whether to include overtime compensation or bonuses in a parent's gross income, a court shall consider all relevant factors, including the realistic expectation that the

---

1. Missouri Rule of Civil Procedure 88.01 requires the use of Form 14 in calculating child support. *Anderson v. Anderson*, 4 S.W.3d 639, 640 (Mo.App. E.D.1999).

2. The trial court found Husband's monthly gross income to be $3,122 based on a yearly income of $31,440, a 401K plan contribution, and his expense reimbursement. The trial court also found that Husband, employed as a copier systems customer service representative, has "business expense reimbursement of $450 per month for gasoline, car expenses, mileage and car insurance."

parent will continue to receive the amount of overtime compensation or bonuses received during the three years, or such time period as may be appropriate, immediately before the beginning of the proceeding and during any other relevant time periods.

On its Form 14, the trial court found Wife's monthly gross income to be $2,621 [$31,450 yearly income] based on an hourly pay rate of $21.60 and averaging 56 hours of work every two weeks.[3] The trial court also found that (1) due to her overtime, bonus and shift work, Wife earned the sum of $32,962 for the tax year 1998 and over $38,000 for the tax year 1999 and (2) Wife does not anticipate overtime or shift work for the year 2000 due to the low census of the hospital and the unionization of the nurses at the hospital.

Wife testified that she earned (1) $30,748 in 1996; (2) $32,962 in 1997; (3) $39,000 in 1998, the most money she had ever made in a year in her life, because of an extraordinary double bonus, which she had never received in the past, and overtime plan; and (4) $38,856 in 1999 because the first five months of the year the hospital was at an extraordinarily high census, several nurses resigned, she worked a lot of overtime, and she received a double bonus. The following exchange also occurred during direct examination of Wife:

Q. Ma'am, since the last time we were at court has there been any information compiled by you regarding your opportunity for overtime?

A. It's not available at this time.

Q. Why?

A. We're at a low census.

Q. And is there any way you know you won't receive overtime in the future?

A. Yes, I do know.

Q. Tell the Court how you know?

A. It's in a negotiation agreement with our contracts with unionizations.

. . .

Q. Do you anticipate you'll be able to make anywhere near [the amount that you earned in 1999] in the year 2000?

A. No, no.

Additionally, referring to an overtime and bonus package, Wife testified:

It's never been in effect. That's if we're at the very high—it's all of a sudden they did that this past year because of the over census that we had, and we had a lot of nurses quit. That was something that's never been in effect before of my 15 years working.

■ It is for the trial court to accept or reject the reliability and weight of a pattern of bonus income. *Bolton v. Bolton,* 950 S.W.2d 268, 273 (Mo.App. E.D. 1997). Great deference is afforded the trial court in determining the witnesses' credibility due to its superior ability to view their demeanor while testifying. *Id.* We find the trial court did not abuse its discretion by not including in Wife's monthly gross income any overtime compensation and bonus. Accordingly, Husband's point two on appeal is denied.

In his third point on appeal, Husband argues that the trial court erred on its Form 14 by including certain items as extraordinary child-rearing costs. The trial court concluded that there are extraordinary expenses for the children which total not less than $689 per month and which should be incorporated into Form 14. The expenses include:

| | |
|---|---|
| Video services for dance recitals | $ 15 |
| School lunches for [K.L.M.] and [K.R.M.] | 78 |
| Voice lessons—[A.M.] | 68 |
| Voice lessons—[K.L.M.] | 68 |

3. Wife is employed as a neo-natal staff nurse. Wife testified that her hourly pay rate is $21.59, though she receives a higher rate for night, weekend, and holiday work.

| | |
|---|---|
| St. Louis Ballet Center | 160 |
| Dance Connection | 75 |
| Fees and costumes for dance competition | 50 |
| Marching band expenses— [R.M.] | 10 |
| School photos | 15 |
| Dance shoes and supplies | 50 |
| Dance camps | 100 |
| TOTAL | 689 |

The comments for use for completion of Form 14 provide that other extraordinary child-rearing costs "may include, but are not limited to, the cost of tutoring sessions, special or private elementary and secondary schooling to meet the particular educational needs of a child, camps, lessons, travel or other activities intended to enhance the athletic, social or cultural development of a child."

■ Husband argues that there was no evidence that A.M. and K.L.M. were taking voice lessons, and thus those related costs should not have been included in the trial court's calculation of extraordinary child-rearing costs on its Form 14. Schedule K attached to Wife's Statement of Income and Expenses identifies those items listed by the trial court as extraordinary child-rearing costs. Wife's Statement of Income and Expenses was an exhibit identified at trial, and Wife testified about Schedule K. Thus, we conclude that the trial court did not abuse its discretion by including the cost of voice lessons in its calculation of extraordinary child-rearing costs on its Form 14.

■ Husband also argues that the cost of school lunches should not have been included in the trial court's calculation of extraordinary child-rearing costs on its Form 14. The comments for use for completion of Form 14 do not provide an exhaustive list of extraordinary child-rearing costs, but they do provide guidance. We conclude that the cost of school lunches is an ordinary, not an extraordinary, child-rearing cost. Therefore, we find that the trial court abused its discretion by including the cost of school lunches in its calculation of extraordinary child-rearing costs on its Form 14. Accordingly, Husband's point three on appeal is granted in part.

■ Husband's next four points on appeal address the correctness of the trial court's valuation of certain marital property. The trial court may believe or disbelieve testimony, including expert testimony, of either party concerning property valuations. *Creech v. Creech*, 992 S.W.2d 226, 230 (Mo.App. E.D.1999). Further, the owner of property is competent to testify as to its value. *Sinopole v. Sinopole*, 871 S.W.2d 46, 49 (Mo.App. E.D. 1993). Where conflicting evidence exists, deference is given to the trial court which can assess the credibility of witnesses. *Endebrock*, 916 S.W.2d at 458.

■ In his fourth point on appeal, Husband argues that the trial court erred in its valuation of the marital home [4] by allowing hearsay testimony of Wife regarding the cost of needed repairs and ignoring the testimony of an independent appraiser.

The trial court made the following relevant findings pertaining to the marital home:

31. [Wife] believes the marital home has damage that will require repair in the amount of $36,700.

32. [Wife] believes the marital home will have a value of $100,000 if the repair of the damage is made.

33. [Husband's] statement of property, filed with his Petition, values the marital home at $100,000.

---

4. The trial court awarded the marital home to Wife.

34. On September 11, 1999, [Husband] believed the marital home was worth $100,000.

The trial court also concluded that the net value of the marital house was zero based on a starting value of $100,000 and subtracting $36,700 for necessary repairs and $66,931 for a mortgage.

Wife's statement of property filed in July 1999 indicated an unknown value as to the marital home. Her amended statement of property filed in November 1999 indicated $67,300 as the value of the marital home. Wife testified that she had a real estate agent do a market analysis on the marital home, which concluded that the home was worth $100,000, but was in need of a lot of repairs. The real estate agent assigned a value to the cost of repairs, which Wife subtracted from the $100,000 to provide the figure on her amended statement of property. Wife also testified as to the needed repairs.

Husband's statement of property filed in May 1999 indicated $100,000 as the value of the marital home. Husband presented the testimony of an appraiser who testified that the fair market value of the marital home was $110,000, taking the repairs into consideration. Husband testified that he believed the fair market value of the marital home was $115,000 to $120,000 based on real estate advertisements in the local area. Husband also testified that the family pets (a dog and a cat) had damaged the home.

■ When, as here, the trial court's valuation of property is within the range of evidence presented, we will not find that valuation erroneous. *Creech*, 992 S.W.2d at 230. Therefore, we find no error in the trial court's valuation of the marital home. Accordingly, Husband's point four on appeal is denied.

In his fifth and sixth points on appeal, Husband argues that the trial court erred in its valuation of a 1999 Ford Ranger[5] and a 1985 Pontiac by accepting Wife's valuation and rejecting Husband's testimony.

The trial court found the value of the Ranger to be $24,000, with a net value of $8,000 after subtracting a $16,000 loan. Wife testified that she believed the value of the Ranger to be $24,000. Wife arrived at this value by looking in the newspaper and seeing a car that looked like the Ranger with that value listed.

Husband testified that he purchased the Ranger for about $16,000 in November 1998. He also testified that he received a trade-in allowance of $800 for the Pontiac, which was jointly owned by Husband and Wife and titled in both of their names. Wife never signed the title to transfer the Pontiac, and Husband never received a power of attorney from Wife. Husband did not produce a bill of sale for the Ranger at trial.[6]

Wife testified that the value of the Pontiac was $2,000. Wife again arrived at this value by looking in the newspaper. The trial court found that Husband traded-in the Pontiac without the knowledge, authority and/or consent of Wife and that the value of the Pontiac at the time of the trade-in was $2,000.

The record reveals that the parties presented evidence of the values of the Ranger and the Pontiac and that the trial court, based on conflicting evidence, assigned values to the property. Where conflicting

---

5. The trial court awarded the Ranger to Husband.

6. Husband attached a bill of sale indicating a purchase price of $15,999 and a trade-in allowance of $805 to his Motion for New Trial, which the trial court denied.

evidence exists, deference is given to the trial court which can assess the credibility of witnesses. *Endebrock*, 916 S.W.2d at 458. Therefore, we find no error in the trial court's valuation of the Ranger and the Pontiac. Accordingly, Husband's points five and six on appeal are denied.

In his seventh point on appeal, Husband argues that the trial court erred in finding a 1992 GMAC van [7] had no value because there was no evidence to support this finding.

Husband's statement of property assigned no value to the van. He testified that he did not know the present value of the van but that "it's probably worth about $5–6,000 to [him]." Wife's statement of property filed in July 1999 indicated an unknown value as to the van. Her amended statement of property filed in November 1999 indicated $2,500 as the value of the van. Wife arrived at this value by subtracting the cost of "major repairs" [8] from a "blue book" value of about $6,000. The van also carried a loan balance of $500.

■■■ The trial court is prohibited from entering a valuation of property not supported by any evidence at trial. *Jezewak v. Jezewak*, 3 S.W.3d 860, 864 (Mo.App. E.D.1999). The value assigned to the van by the trial court is consistent with the value assigned on Husband's statement of property. Therefore, we find no error in the trial court's valuation of the van. Accordingly, Husband's point seven on appeal is denied.

■■■ In his eighth point on appeal, Husband argues that the trial court erred in finding that the $7,100 that Husband paid to his mother in April 1995 was marital property. Husband asserts that the trial court ignored Husband's testimony that the $7,100 was repayment of a loan and that there was no evidence that Husband squandered or hid the money in anticipation of divorce.

The trial court found that Husband "provided to his mother ... $7,100 from the proceeds of the refinancing of the marital home without the knowledge, authority and/or consent of [Wife]." In its division of marital property, the trial court credited Husband with $7,100 as "Proceeds from 1995 Refinancing of Marital Home given by Husband to Husband's Mother."

■■■ The trial court has broad discretion in identifying marital property. *Kahn v. Kahn*, 839 S.W.2d 327, 333 (Mo. App. E.D.1992). Further, where a party has intentionally secreted or squandered an asset in anticipation of divorce, the trial court may hold that party liable for the value of the asset by awarding it to the party. *S.L.J. v. R.J.*, 778 S.W.2d 239, 244 (Mo.App. E.D.1989).

Although the trial court did not specifically identify the $7,100 as secreted or squandered funds in anticipation of divorce, its actions imply such a conclusion and sufficient evidence exists to support the conclusion so that the trial court could hold Husband liable for the funds. Husband's mother testified that she loaned Husband and Wife money for cars during their marriage for which she had been paid back. In 1988, Wife received a $15,000 settlement for a personal injury lawsuit, which Husband testified they used to pay his mother back for the car loans. Husband also testified from his deposition that the loans his mother made to him and Wife were made prior to 1988. In April 1995, Husband and Wife received about $8,000

---

7. The trial court awarded the van to Wife.

8. Wife testified that the repairs included "a rear main seal, transmission" and the van had 142,000 miles.

from a refinancing of the marital home. Husband testified that from these funds, he wrote a check out to his mother in the amount of $7,100. Wife testified that she was unaware that Husband wrote this check and that she did not authorize it. She also testified that she and Husband paid his mother back everything that they owed her in 1988 with her personal injury settlement. Therefore, we find the trial court did not abuse its discretion in finding that the $7,100 that Husband paid to his mother in April 1995 was marital property and in crediting Husband with the $7,100 in its division of marital property. Accordingly, Husband's point eight on appeal is denied.

In his ninth point on appeal, Husband argues that the trial court erred in assigning certain marital debt to Husband.[9]

The division of marital assets and debts must be just and equitable, though it need not be equal. *Nichols v. Nichols*, 14 S.W.3d 630, 635 (Mo.App. E.D. 2000). Division of the marital estate is left to the sound discretion of the trial judge, and we will interfere only when the division is so heavily weighted against one party as to amount to an abuse of discretion. *Id.* Absent an abuse of discretion, we will defer to the trial court even if the evidence could support a different conclusion. *Id.*

Husband argues that because Wife testified that the MBNA Mastercard, the Mercantile Visa and the joint Mercantile Visa debt should be split and the personal property tax should be paid by whoever owns the car, the trial court erred in assigning this debt to Husband. Husband's argument appears to suggest that the trial court abuses its discretion by not

adhering to a party's suggested division of marital debt. Husband cites no authority to support this argument. Accordingly, we find the trial court did not abuse its discretion in its assignment of this debt.

Husband also argues that the trial court erred in assigning the Union Acceptance Corporation debt to Husband. Wife testified that Husband and Wife obtained the Union Acceptance Corporation loan, now with a $500 balance, to pay for the GMAC van. Although the trial court identified the Union Acceptance Corporation loan as "unsecured marital debt," Wife testified that they owed $500 on the van. Prior to the list of marital property awarded to Wife, which included the van, the trial court stated in its Judgment: "Wife shall be responsible for any debt encumbering the asset and shall indemnify and hold [Husband] harmless with respect to the same...." This statement is inconsistent with the trial court's assignment of the Union Acceptance Corporation debt to Husband because the debt encumbers the van.

Accordingly, Husband's point nine on appeal is granted for the limited purpose of resolving the inconsistency in the Judgment in assignment of the Union Acceptance Corporation debt.

In his tenth point on appeal, Husband argues that the trial court erred in finding certain debt marital. The trial court found as marital debt, and ordered Wife to pay, two loans from her mother: one loan, in the amount of $847, was to pay a judgment against both parties arising from a lawsuit involving a time-share condominium, and the other loan, in the amount of $4,700, was for guardian ad litem and attorney's fees accumulated by Wife.

---

9. The marital debt assigned to Husband totaled $14,562, and the marital debt assigned to Wife totaled $6,446.

Husband argues that the trial court erred in finding the $847 marital debt because the court reduced the value of the time-share condominium, which it awarded to Wife, by that amount. The trial court assigned the $847 debt to Wife, and thus we cannot conclude that the trial court abused its discretion in its assignment or allocation of this debt.

■ Husband also argues that the trial court erred in finding the $4,700 marital debt because, although it assigned the debt to Wife, it ordered Husband to pay Wife's attorney's fees and the guardian ad litem fees, resulting in Husband paying the $4,700 debt.[10] We cannot determine from the record that the current balance of attorney's fees and guardian ad litem fees is not in addition to earlier fees for which the $4,700 loan may have already paid. Thus, we cannot conclude that the trial court abused its discretion in its assignment or allocation of this debt. Accordingly, we find the trial court did not abuse its discretion in finding that the loans to Wife's mother were marital debt. Husband's point ten on appeal is denied.

■ In his eleventh point on appeal, Husband argues that the trial court erred in awarding Wife $4,460 in retroactive child support from the filing of the Petition to the date of trial because Wife's motion pendente lite prayed for child support from the date of service of the Petition and because the issue was settled by the Judgment Pending Dissolution Proceedings entered on September 16, 1999.

■ Section 452.340.1 [11] permits the trial court to award retroactive child support to the date of the filing of the petition. It is within the trial court's discretion to award retroactive child support. *Halupa*

*v. Halupa*, 943 S.W.2d 272, 275 (Mo.App. E.D.1997).

In its Judgment, the trial court made the following order:

52. Child support shall be retroactive to the date of filing of the Petition, May 11, 1999, through and until the date of the Judgment Pendente Lite, September 16, 1999 for a judgment against [Husband] and in favor of [Wife] in the amount of $4,460 arrived at by multiplying the number of months between the date of filing and the date of the Judgment Pendente Lite and the presumed child support obligation for four children.

Husband filed the Petition on May 6, 1999. Service on Wife was May 11, 1999. Thus, although the trial court indicated that it was awarding retroactive child support to the date of the filing of the Petition, as it is entitled to do, the trial court actually used the date of service of the Petition in its computation, rendering the first part of Husband's argument moot.

■ As to the second part of Husband's argument, the Judgment Pending Dissolution Proceedings entered on September 16, 1999 ordered Husband to make child support payments effective September 15, 1999. It was silent as to any child support obligation between the filing of the Petition and the Judgment Pending Dissolution Proceedings. Further, a pendente lite order and a decree of dissolution are independent orders. *In re Marriage of Kovach*, 873 S.W.2d 604, 607 (Mo.App. E.D.1993). The pendente lite order stands on its own merits and is not relevant to a spouse's permanent needs for child sup-

---

10. We address the specific award of attorney's fees and guardian ad litem fees in Husband's point thirteen on appeal.

11. All statutory references are to RSMo.Cum. Supp. (1998), unless otherwise indicated.

port as provided in the decree of dissolution. *Id.* Therefore, we find the trial court did not abuse its discretion in awarding retroactive child support to Wife. Accordingly, Husband's point eleven on appeal is denied.

■ In his twelfth point on appeal, Husband argues that the trial court erred in ordering Husband to pay one-half of the college education for each child because under the child support award and the division of marital assets and debts, Husband does not have any resources to pay for the education and because the evidence failed to establish the costs of such education.

■ The trial court is in the best position to make a determination concerning a parent's financial ability to assist in the support of his or her child, including expenses associated with a college education. *Jones v. Jones,* 958 S.W.2d 607, 613 (Mo. App. W.D.1998). The trial court balances the ability of the non-custodial parent to pay these expenses against the needs of the child. *Id.* The record reflects that the trial court properly considered these factors to make its determination regarding payment of college education expenses.

The trial court found that Husband has no present living expenses for himself as he resides in his brother's home and is not required to pay rent. Additionally, both parties admitted into evidence statements of property and income and expenses and paycheck stubs. *See Thompson v. Dalton,* 914 S.W.2d 811, 814 (Mo.App. W.D.1995). The trial court also found that there are "extraordinary expenses for the college education of the minor child, [A.M.,] and there will be extraordinary expenses for

the college education of the other minor children, all which should be shared equally by [Husband] and [Wife]." Thus, the trial court did not order Husband to pay for all of the college education expenses, but rather it ordered Wife to pay one-half of the college education for each child as well.

■ Further, the evidence need not establish the costs of post-secondary education for the order to be enforceable. A court is not required to foresee the exact amount of educational costs a child will incur in the future. *Morgan v. Ackerman,* 964 S.W.2d 865, 871 (Mo.App. E.D.1998). A support provision is sufficiently definite in amount if the provision contains criteria from which a court could, upon a hearing, ministerially determine the obligations of the parties. *Id.* The trial court's order meets this standard. The order required Husband to pay a percentage of the children's post-secondary education costs and defines what items are to be included in those costs. The order also limited the costs of each party to "one-half of the then cost for tuition, fees, books, and dormitory costs for room and board for the University of Missouri at Columbia, regardless of what institution the child attends."

■ Husband also argues that the trial court erred in failing to give Husband credit against his child support obligation for room, board, and other items supplied by the education institution.[12] The circumstances under which child support may be abated are controlled by Section 452.340.2. *Anderson v. Aronberg,* 927 S.W.2d 931, 936 (Mo.App. E.D.1996). Abatement is thus impliedly forbidden under all other circum-

---

**12.** Husband relies on *Selter v. Selter,* 982 S.W.2d 764 (Mo.App. E.D.1998), to support his argument. His reliance is misplaced. *Selter* held that Section 452.340.6 RSMo. Cum.Supp. (1997) authorizes a trial court to

order abatement of child support as a credit for payment of specified college expenses pursuant to a parenting plan or court order. *Id.* at 766. This section, however, was repealed in 1998.

stances. *Id.* Section 452.340.2 does not provide for abatement while a child attends college. *Id.* Therefore, we find the trial court did not err in ordering Husband to pay one-half of the college education for each child. Accordingly, Husband's point twelve on appeal is denied.

In his thirteenth point on appeal, Husband argues that the trial court erred in ordering Husband to pay all of Wife's attorney's fees and the guardian ad litem fees because Husband has no financial resources to pay the fees and Wife's income is greater than Husband's income.

■ The distribution of attorney's fees by the trial court is presumptively correct. *Kaelin v. Kaelin,* 988 S.W.2d 657, 661 (Mo.App. E.D.1999). The trial court has wide discretion in awarding attorney's fees, and its award will not be disturbed absent an abuse of discretion. *Briem,* 969 S.W.2d at 884. In determining if there was an abuse of discretion, the complaining party must show that the award was clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of deliberation. *Id.* A spouse's inability to pay is not a requirement for awarding attorney's fees, and an award must be reasonable considering each spouse's financial position. *Id.* ·

■ Section 452.355.1 provides in part: [T]he court from time to time after considering all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding pursuant to sections 452.300

to 452.415 and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding and after entry of a final judgment.

A party's conduct during the marriage may also be considered. *Kovach,* 873 S.W.2d at 608.

■ Similarly, the trial court has discretion to award guardian ad litem fees as a judgment to be paid by any party to the proceedings under Section 452.423.4.[13] *Wenger v. Wenger,* 876 S.W.2d 735, 742 (Mo.App. E.D.1994). Its ruling will not be disturbed absent an abuse of discretion. *Id.*

■ The trial court found that Wife "is without sufficient property, income and/or resources to provide for her attorney's fees, expert witness fees or the costs of this action, while [Husband] is gainfully employed, possessed of substantial assets and is able to pay the same." The trial court also found that Husband had been physically and emotionally abusive to Wife and guilty of marital misconduct. Thus, the trial court ordered Husband to pay to Wife $15,000 for her attorney's fees and costs and to pay 100% of the guardian ad litem fees. Wife's counsel testified that total fees and costs to date were $15,412. In his Motion to Amend Judgment, or in the alternative, for a New Trial, the Guardian Ad Litem indicated a balance of fees of $2,125. In addition to his income, the trial court awarded Husband marital property valued at $21,746.[14] Based on these facts, we find that the trial court did not abuse its discretion by ordering Husband to pay to Wife $15,000 for her attorney's fees and costs and to pay 100% of the

---

**13.** Section 452.423.4 requires that the guardian ad litem be awarded a reasonable fee for services as set by the court.

**14.** The trial court awarded Wife marital property valued at $25,066.

guardian ad litem fees. Accordingly, Husband's point thirteen on appeal is denied.

In his fourteenth point on appeal, Husband argues that the trial court erred in adopting verbatim the Proposed Findings of Facts and Family Court Judgment of Dissolution of Marriage submitted by Wife.

Although Husband attached to his reply brief a Memorandum for Filing indicating that Wife filed a Proposed Family Court Judgment of Dissolution of Marriage on February 7, 2000, the docket sheets do not indicate any party filed any such document.

■ Even if such a document had been submitted to the trial court, the trial court's adoption of it would not necessarily be error. As long as the trial court thoughtfully and carefully considers the parties' proposed findings and agrees with the content, there is no constitutional problem with the court adopting in whole or in part the findings of fact and conclusions of law drafted by one of the parties. *State v. White,* 873 S.W.2d 590, 600 (Mo. banc 1994). Husband asserts that the trial court did not thoughtfully and carefully consider the alleged proposed findings because the Judgment contains numerous errors, contradictions, and a failure of evidence. We have addressed the specifics of Husband's assertion in his previous thirteen points on appeal. Accordingly, Husband's point fourteen on appeal is denied.

The trial court Judgment is (1) reversed as to the inclusion of the expense reimbursement in Husband's monthly gross income on the trial court's Form 14 and accordingly is remanded for recalculation of Husband's child support obligation; (2) reversed as to the inclusion of the cost of school lunches in the calculation of extraordinary child-rearing costs on the trial court's Form 14 and accordingly is remanded for recalculation of Husband's

child support obligation; (3) remanded to resolve the inconsistency in assignment of the Union Acceptance Corporation debt; and (4) affirmed in all other respects.

MOONEY, P.J. and SIMON, J., concur.