Tracy L. KRATZER, Respondent,

v.

Michael R. KRATZER, Appellant.

No. ED 104462

Missouri Court of Appeals,
Eastern District,
**DIVISION TWO.**

Filed: May 9, 2017

Rehearing Denied June 22, 2017

---

Jane E. Tomich, St. Charles, MO, for Respondent.

Jonathan D. Marks, St. Louis, MO, for Appellant.

1.  Missouri State Employees' Retirement Sys-

Colleen Dolan, Judge

## I.  Introduction

Michael R. Kratzer ("Husband") appeals the trial court's order and judgment of dissolution of marriage ("Judgment") to Tracy L. Kratzer ("Wife"). Husband argues the court erred and abused its discretion by: (1) ordering Husband pay Wife modifiable maintenance of $1,800 per month; (2) calculating child support without imputing any income to Wife; (3) awarding Wife 60% of the marital portion of Husband's MOSERS [1] Pension Plan; (4) making an unequal distribution of marital property; (5) overvaluing Husband's partnership interest in Value Homes, LLC; and (6) ordering Husband pay a portion of Wife's attorney's fees.

We affirm the Judgment with exception to its award of 60% of the marital portion of Husband's MOSERS Pension Plan, which we reverse and remand with directions to amend the Judgment to conform with this opinion and the trial court's "Second Amended Missouri State Employees' Retirement System Division of Benefits Order" filed on September 9, 2016.

## II.  Factual and Procedural Background

Husband and Wife were married on August 30, 1986. They have two children, a son, R.K., ("Son") and a daughter, A.K., ("Daughter"). Both children are over the age of majority and son is emancipated. Daughter is not capable of supporting herself or living independently due to her severe medical and developmental disabilities. Husband and Wife separated in April of 2012, and Wife filed a petition for legal separation on July 2, 2012. Husband filed a counter-petition for dissolution of marriage

tem.

on August 3, 2012. On August 27, 2012, the court entered a Judgment Pendente Lite ("PDL"), ordering Husband to pay Wife $1,600 per month in maintenance. This order allowed Husband to have temporary custody of Daughter every other weekend beginning September 7, 2012. The PDL also prohibited either party from removing, selling, transferring, or otherwise disposing of any marital or separate property unless specifically agreed to by both parties in writing. Both parties filed amended petitions on August 22, 2013. In June 2014, the court appointed a Guardian ad litem ("GAL") for Daughter. The court increased the monthly amount of maintenance to $1,800 in December 2014 and ordered Husband to pay a $25,000 bonus he had received, minus state and federal taxes, to Wife's attorney for partial payment of her attorney's fees.

On January 29, 2015, the court ordered Husband to deposit into the registry of the court the $50,000 he received for selling his partnership interest in Value Homes, LLC. The court found the partnership interest was marital property, which Husband sold without court approval or Wife's consent, in violation of the court's previous orders. On February 6, 2015, the court entered a judgment granting the GAL's and the parties' request for disbursement of attorneys' fees, and it ordered the $50,000 deposited with the court be distributed as follows: (1) $10,000 to the GAL, (2) $10,000 to Wife's attorney, and (3) $10,000 to Husband's attorney. The court later ordered the remaining $20,000 be split between Husband and Wife equally.

Trial was held on June 16–17, July 14, and August 19, 2015.[2] The court entered its Judgment on January 27, 2016, dividing the marital property, awarding separate property, and ordering Husband pay Wife maintenance of $1,800 per month. The court additionally awarded Wife the marital home, 60% of the marital portion of Husband's MOSERS Pension Plan and Uni–Group Deferred Contribution Plan. Furthermore, it ordered Husband to pay Wife an equalization payment of $15,475.50 and pay $15,000 of Wife's attorney's fees.

On February 26, 2016, Husband filed a combined motion to amend, motion for new trial, and motion to reopen evidence. The court denied this motion on May 25, 2016. Husband timely filed his notice of appeal on June 3, 2016. This appeal follows.

## III. Standard of Review

■■■ An appellate court will affirm a trial court's dissolution of marriage judgment so long as there was substantial evidence to support the trial court's holding, it was not against the weight of the evidence, and it did not erroneously declare or apply the law. *Cule v. Cule*, 457 S.W.3d 858, 862 (Mo. App. E.D. 2015) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). On appeal, we view the evidence and inferences "in the light most favorable to the trial court's judgment and disregard all contrary evidence and inferences." *Id.* "The party challenging the dissolution decree has the burden of demonstrating error." *McCallum v. McCallum*, 128 S.W.3d 62, 66 (Mo. App. E.D. 2003).

## IV. Discussion

Husband argues the court erred and abused its discretion in six ways: (1) ordering Husband pay Wife modifiable maintenance of $1,800 per month; (2) calculating child support without imputing any income to Wife; (3) awarding Wife 60% of

---

2. On June 16, 2015, Wife abandoned her petition for legal separation and proceeded upon a petition for dissolution of marriage.

the marital portion of Husband's MOSERS Pension Plan; (4) making an unequal distribution of marital property, including but not limited to awarding Wife 60% of the marital share of Husband's Uni–Group Deferred Contribution Plan, all equity in the marital home, and an equalization payment of $15,475.50; (5) overvaluing Husband's partnership interest in Value Homes, LLC at $77,500 rather than $50,000; and (6) ordering Husband pay $15,000 of Wife's attorney's fees.

**i. The trial court did not err in ordering Husband pay Wife modifiable maintenance of $1,800 per month.**

A court may award maintenance pursuant to § 452.335 [3] only if the court finds a spouse: "(1) lacks sufficient property, including marital property apportioned to [her], to provide for [her] reasonable needs; and (2) is unable to support [herself] through appropriate employment[.]" § 452.335.1. Once a court determines a spouse meets this threshold test, the court looks to the statutory factors set out in § 452.335.2 to determine the appropriate amount and duration of maintenance. Unless we find that the amount awarded is "patently unwarranted and wholly beyond the means of the spouse who pays" we will not disturb the court's award of maintenance. *Souci v. Souci*, 284 S.W.3d 749, 758 (Mo. App. S.D. 2009). The challenging party "bears the burden of proving the maintenance award shocks this Court's sense of justice." *Id.* (internal quotation marks omitted).

The trial court looked at the award of marital property and found that Wife lacked sufficient property to meet her reasonable needs and was unable to support herself through appropriate employment. The court stated that Wife is the custodian of the parties' disabled Daughter, and this responsibility does not permit Wife to work full-time. The court found that Husband "does not participate as a custodian for [Daughter][,] placing upon Wife a greater burden." The court concluded that Wife does not have income to meet her reasonable needs, which the court calculated to be $2,901 per month.

The court then considered the statutory factors under § 452.335.2 and found that Wife was unable to be employed full-time outside of the home because of Daughter's disabilities, which require Daughter to have 24–hour care. § 452.335.2(1).[4] The court additionally found that the property apportioned to Wife would not provide any current support to help pay her monthly expenses, and Wife does not have any monies available to her to meet her reasonable needs. *Id.* The court found that Wife has an average of $695.44 per month in Social Security Disability benefits available to her as representative payee to meet Daughter's reasonable needs. The court did not find that Wife was physically unable to work, but did find she is unable to work as much as she could during the marriage due to her responsibilities as custodian of Daughter. § 452.335.2(3). The court also found the parties could not support the same standard of living established during the marriage, in part due to the debts incurred as a result of the dissolution proceedings. § 452.335.2(5)–(6).

With regards to Husband's earning capacity, the court found that Husband earned approximately $45,000 per year at the time he filed a petition for dissolution of marriage. However, at the time of trial, the court found that Husband earned a gross annual income of $80,000 per year. The court found Husband's net monthly

---

3. All references are to RSMo 2000 unless otherwise specified.

4. Daughter works part-time at a facility Mondays, Wednesdays, and Fridays.

income was $4,890 after deducting the costs of health insurance and taxes. The court stated that at the time of trial, Husband lived with his girlfriend who provides financial assistance to him on a monthly basis. Accordingly, the court concluded that Husband had sufficient income leftover each month to pay maintenance to Wife and meet some of her reasonable needs. § 452.335.2(8).

Additionally, the court found that Husband had committed misconduct by liquidating the two largest marital assets—besides the marital home—in violation of the court's PDL. Section 452.335 permits the court to consider the conduct of the parties during the marriage and dissolution, including their respective misconduct. *Sweet v. Sweet*, 154 S.W.3d 499, 505 (Mo. App. W.D. 2005) (citing § 452.335.2(9)). Husband transferred $109,000 out of his 457 Deferred Compensation Plan retirement account and sold the marital partnership interest in Value Homes, LLC for $50,000. Additionally, the court found Husband's choice to live far away from Wife and Daughter increased Wife's obligation and responsibility for Daughter's care to 24 hours a day, seven days a week, with little to no assistance from Husband.[5]

Husband argues on appeal that the evidence at trial demonstrated that Wife is capable of earning income sufficient to support herself through her photography business. Husband argues that the court failed to recognize that Wife deliberately chose to not work and "gave Wife a 'pass' on employment[.]" This is incorrect as the court found that Wife could work part-time but could not work full-time as she did while married to Husband without incurring significant child-care costs. The court impliedly found that Wife was responsible for earning $405.56 per month to meet her needs as this is the difference between the amount the court found to be Wife's monthly expenses ($2,901) less the maintenance award ($1,800) and Daughter's net Social Security Disability benefits ($695.44). The maintenance award is modifiable; if Wife's income increases substantially, Husband may file a motion to modify.

The court weighed the statutory factors of § 452.335.2 and found that an award of $1,800 per month was appropriate. We do not agree with Husband that this award was excessive or "patently unwarranted" from the evidence in the record. Based on the foregoing, Husband has failed to demonstrate that the court's award shocks our sense of justice. Point I is denied.

**ii. The trial court did not err in calculating child support.**

■ The Missouri Supreme Court established a two-step process for determining child support when it adopted Rule 88.01. First, the court must determine and find for the record the presumed correct child support amount pursuant to a correct Form 14 calculation. Then, the court must consider whether to rebut the presumed correct child support amount, as found by the court, as being unjust or inappropriate after consideration of all relevant factors.

*Bell v. Bell*, 125 S.W.3d 899, 906 (Mo. App. W.D. 2004) (internal quotations omitted).

At trial, there was testimony from both parties establishing that they did not wish the court to award any child support under Form 14 for separate reasons. The court found that Wife was not requesting child support from Husband because such an

---

5. Husband argues that he is available to watch Daughter on his weekends so Wife may schedule photography shoots, but the evidence demonstrated that Husband did not watch Daughter on the vast majority of weekends during the pendency of this case.

award would reduce the monthly Social Security Disability benefits Daughter receives. Husband testified he disagreed with the amount by which Daughter's benefits would be reduced, but he generally agreed there would be a reduction. Husband further stated he did not wish to pay child support but would pay whatever the court ordered him to pay. Husband wanted the court to impute an income to Wife.

Initially, the court filled out a Form 14 form, without imputing any income to Wife. However, the court then determined that the application of the Form 14 Guidelines would be unjust and inappropriate in light of Daughter's circumstances and the amount of maintenance payable by Husband to Wife. Husband asserts on appeal that the court erred because it did not impute any income to Wife on the Form 14 in the underlying case. Husband acknowledges in his brief that the trial court did not use the Form 14, as it determined not to award any child support for the above-stated reasons. Husband argues this Court should reverse the trial court's order and remand so that the court may "properly prepare a Form 14 consistent with its imputation of income in its determination of maintenance." We fail to see how the husband is aggrieved or could demonstrate prejudice under these circumstances. Point II is denied.

### iii. The trial court erred in awarding Wife 60% of the marital portion of Husband's MOSERS Pension Plan.

In the trial court's Judgment, it awarded Wife "sixty percent (60%) of the marital portion of [the MOSERS Pension Plan]." This allocation violates the express terms of § 104.312.1(3).[6] Under § 104.312.1, a court may divide marital pensions, annuities, benefits, rights and retirement allow-

ances between the parties in any action for dissolution of marriage. Such a division:

> Shall identify the monthly amount to be paid to the alternate payee, which shall be expressed as a percentage *and which shall not exceed fifty percent of the amount of the member's annuity accrued during all or part of the time while the member and alternate payee were married*; and which shall be based on the member's vested annuity on the date of the dissolution of marriage or an earlier date as specified in the order[.]

§ 104.312.1(3) (emphasis added).

Our Court has held that this "statute sets forth the formula for pension benefit division of State employee pensions...[and] the Missouri legislature requires courts to use the formula set forth in section 104.312." *Nohr v. LeFaivre*, 201 S.W.3d 72, 74 (Mo. App. E.D. 2006) (overturned on other grounds by *J.C.W. ex. rel Webb*, 275 S.W.3d 249, 254 (Mo. banc 2009)).

The Judgment distributing the liquidated MOSERS Pension Plan violated § 104.312.1(3) by awarding Wife 60% of the marital portion of the MOSERS Pension Plan. Attempting to comply with the statute, the trial court filed a "Second Amended Missouri State Employees' Retirement System Division of Benefits Order" on September 9, 2016, ordering the executive director of MOSERS to pay "fifty percent (50%) of the monthly benefit accrued during the marriage, otherwise payable to [Husband] under the [MOSERS Pension Plan]." Although the second amended order complied with Missouri law, the Judgment still conflicts with § 104.312.1. Accordingly, solely with respect to the distribution of the MOSERS Pension Plan, we reverse and remand the Judgment to be modified in a manner con-

---

**6.** All references to § 104.312 are to RSMo Supp. 2013.

sistent with this opinion and the trial court's "Second Amended Missouri State Employees' Retirement System Division of Benefits Order" filed on September 9, 2016.

**iv. The trial court did not err in making an unequal distribution of marital property, including but not limited to awarding Wife 60% of the marital share of Husband's Uni–Group Deferred Contribution Plan, all equity in the marital home, and an equalization payment of $15,475.50.**

■■■■■ "A division of marital property need not be an equal division, but must only be fair and equitable given the circumstances of the case." *Workman v. Workman*, 293 S.W.3d 89, 96 (Mo. App. E.D. 2009). Trial courts must divide marital property equitably after considering the factors laid out in § 452.330.1. *Dardick v. Dardick*, 670 S.W.2d 865, 869 (Mo. banc 1984). The statutory factors are not exclusive and there is not a strict formula courts must use to weigh these factors. *Finch v. Finch*, 442 S.W.3d 209, 215 (Mo. App. W.D. 2014). The trial court's division of marital property is presumptively correct and the moving party bears the burden of overcoming this presumption. *Workman*, 293 S.W.3d at 96. An appellate court will only reverse if the court abused its discretion by making a division that is heavily and unduly weighted in favor of one party. *Id.* at 95. "It is not *per se* an abuse of discretion if the trial court awards one party a considerably higher percentage of the marital property than it awarded the other party." *Id.* at 96.

The factors a court must consider under § 452.330.1 are:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to

live therein for reasonable periods to the spouse having custody of any children;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

■■■ Here, the court considered these factors and awarded Wife the family home, which has special modifications for Daughter. The court found that Wife was presently unemployed, could not work full-time due to her role as the primary caregiver for Daughter, and Husband earns $80,000 per year. § 452.330.1(1). The court looked at the value of nonmarital property set apart to each spouse and found that none of the property awarded to Wife was income-producing and did not allow her to meet her reasonable needs. § 452.330.1(3). The court found that Husband had committed misconduct by liquidating the two largest marital assets besides the marital home in violation of the court's order. § 452.330.1(4). Finally, the court noted that Husband's decision to live far away from Wife and Daughter resulted in Wife having an increased responsibility of providing 24–hour care for Daughter. § 452.330.1(5).

The court division of the marital property was as follows:

Wife received the marital home and the court averaged the two proposed values of the parties to find the fair market value at the time of trial was $218,500. The court found the net equity to be $118,149. The court awarded Wife 100% interest in T. Kratzer Photography, LLC, which the

court found had a fair market value of $1,000. The court awarded each of the parties' bank accounts currently in their own names, but did not assign values to these accounts. The court stated each party would be responsible for their individual credit card debts.[7]

A court values marital property as of the time of trial. *Fike v. Fike*, 509 S.W.3d 787, 800 (Mo. App. E.D. 2016) (*citing Taylor v. Taylor*, 736 S.W.2d 388, 391 (Mo. banc 1987)). We defer to the trial court's determination of value and credibility of witnesses when there is conflicting evidence in the record. *McGowan v. McGowan*, 43 S.W.3d 857, 864 (Mo. App. E.D. 2001) (deferring to the trial court's "valuation of certain marital property"). The court found the partnership interest in Value Homes, LLC, was $77,500, taking into account the conflicting testimony of: Husband's valuation of the property at the time of trial, Wife's separate appraisal of the property, and Husband's testimony at his deposition in 2013 that his partnership interest was $80,000. The court found Husband sold the partnership interest, in violation of the court's order, for $50,000. The court divided this amount evenly between the parties, and set aside to Husband the remaining value attributable to the liquidated asset, after finding Husband's testimony with respect to the sale of the property not credible.[8] "We recognize, and defer to, the trial court's superi-

or ability to judge factors such as credibility, sincerity, character of the witnesses, and other intangibles not revealed in the transcript." *Holtgrewe v. Holtgrewe*, 231 S.W.3d 233, 235 (Mo. App. E.D. 2007). "When...the trial court's valuation of property is within the range of evidence presented, we will not find that valuation erroneous." *McGowan*, 43 S.W.3d at 865. Therefore, Husband received $52,500 ($27,500 + $25,000) in partnership interest. Husband was also awarded two vehicles and a flatbed trailer with a combined value of $21,000.

The court found that Husband had four retirement accounts: a State of Missouri 457 Deferred Compensation Plan, a State of Missouri 401 Qualified Plan, a MOSERS Pension Plan, and a Uni–Group Deferred Contribution Plan. The court found that Husband liquidated the 457 Deferred Plan in violation of the court's order and therefore awarded him the unliquidated value of that plan ($109,624).[9] The court awarded Wife the remaining balance of the 401 Qualified Plan ($8,024.51). The court's award to Wife 60% of the marital portion of the MOSERS Pension Plan to be calculated using the *Lynch* formula was done in error but was subsequently amended (discussed above in Point III). Finally, the court awarded Wife 60% of the marital portion of the Uni–Group Deferred Contribution Plan using the *Lynch* formula.[10]

---

7. The court also awarded Wife two life insurance policies after finding that neither had any surrender cash value and Husband did not object to Wife's request that the policies be awarded to her.

8. The court stated in its order and judgment: "[T]he Court does set aside the total amount of the value of the partnership interest minus the previously distributed amount to Husband believing that the property was sold for either less than fair market value or Husband received additional sums, which was not disclosed to the Court. As stated above, the Court finds Husband's testimony in respect to the sale of the property not to be credible."

9. This was the value of the plan before liquidation, which was reduced to approximately $82,000 upon liquidation due to tax consequences.

10. Husband began working for Uni–Group in 2012 and the marriage ended in 2016. The parties were not able to provide the court with a present-day value of the pension.

From the hard numbers available in the record, we find the court awarded $152,173.51 in marital property to Wife and $183,124 to Husband; additionally each party received a percentage of Husband's pension plans.[11] Therefore, an equalization payment to Wife of $15,475.50 was not unfair or unconscionable. The court considered the factors prescribed in § 452.330.1 in dividing the marital property and a careful review of the record demonstrates the division was equitable. We find the trial court did not err or abuse its discretion in this regard. Point IV is denied.

**v. The trial court did not err in valuing Husband's partnership interest in Value Homes, LLC at $77,500.**

Value Homes, LLC, was a partnership formed by Husband and a business partner.[12] The sole asset of Value Homes, LLC, was a rental property on Hilldale Avenue, in Brentwood, Missouri, which the partnership bought with the intent to repair and rent or sell. Husband provided the labor and paid for half of the repair materials in this enterprise, and the partnership was able to rent the property for a number of years.[13] The property developed a water leak in the basement and Husband testified that he could not afford the required repairs to make the property rentable. After an appraisal and negotiations, Husband sold his half-interest in the partnership to his partner for $50,000. The court ordered Husband to deposit this amount into the court's registry. Husband argues on appeal that the court should

have found the value of the partnership interest was $50,000.

At trial, the court found that at the time Husband sold his interest in Value Homes, LLC, the property owned by the partnership had a fair market value of $155,000. The court reached this determination after taking into account the conflicting testimony of Husband's valuation of the property at trial which he stated was worth between $80,000–$82,000, Wife's separate appraisal of the property for $155,000, and Husband's testimony at his deposition that the property was worth $160,000. "Judging credibility and assigning weight to evidence and testimony are matters for the trial court, which is free to believe none, part, or all of the testimony of any witnesses." *Kropf v. Jones*, 489 S.W.3d 830, 834 (Mo. App. E.D. 2015) (quotations omitted). "As long as the record contains credible evidence upon which the trial court could have formulated its beliefs, [an appellate court] will not substitute its judgment for that of the trial court." *Fike*, 509 S.W.3d at 800. We find the trial court's valuation of Husband's partnership interest in Value Homes, LLC was based on credible evidence. Point V is denied.

**vi. The trial court did not err in ordering Husband pay a portion of Wife's attorney's fees.**

A court has the discretion to award reasonable attorney's fees "after considering all relevant factors including the financial resources of both parties, the merits of the case and the actions of the

11. Wife received $118,149 + $1,000 + $ 8,024.51 + $25,000 = $152,173.51. Husband received $21,000 + $52,500 + $109,624 = $183,124.

12. Husband testified his business partner's first name was Julie and he could not remember her last name.

13. Husband testified the LLC was formed in December of 2010 and the Hilldale Avenue property was its sole asset. The property took about a year to repair, but Husband believed they may have begun renting it in the fall of 2011 until sometime in 2014.

parties during the pendency of the action[.]" *Id.* at 802; § 452.355.1. On appeal, we presume that the court considered all of the factors and the award was correct. *Fike*, 509 S.W.3d at 802. "We will reverse only upon finding the trial court abused its discretion...[which] occurs if the award was clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of deliberation." *Id.* at 802–03. (internal quotations omitted). On appeal, the moving party bears the burden of proof. *Id.* at 802.

■ Husband argues the trial court erred in ordering him to pay any additional attorney's fees for Wife because Wife deliberately set out to increase the costs of litigation from the outset. The court cited § 452.355 and stated it was considering the financial resources of both parties and their conduct during the pendency of the case. Specifically, the court noted that Husband's income had increased from the time of filing for dissolution from $45,000 to $80,000 at the time of trial, and Husband had violated the court's order by disposing of $159,000 in marital assets.[14] The court found that Wife's attorney's fees increased due to Husband's actions *but the court noted that the behavior of both parties had resulted in escalation of attorneys' fees*. The trial court is presumed to have properly considered these factors in awarding attorney's fees. *Id.* at 802. We find no basis for rebutting this presumption and Husband has not demonstrated the court abused its discretion. Point VI is denied.

### V. Conclusion

For the foregoing reasons, we affirm the trial court's order and judgment, finding it did not err or abuse its discretion, with

exception to its award of 60% of the marital portion of Husband's MOSERS Pension Plan, which we reverse and remand with directions to amend its judgment to conform with this opinion and the trial court's "Second Amended Missouri State Employees' Retirement System Division of Benefits Order" filed on September 9, 2016.

Sherri B. Sullivan, P.J., concurs.

Roy L. Richter, J., concurs.

---

14.  Of Wife's total fees, Husband was ordered to pay $30,377 or 42.4%.