HUGO ESSEN and ALVINA C. ESSEN, Appellants, v. LAWRENCE E. ADAMS; BERTHA L. ADAMS; WILLIAM F. ADAMS; SOPHIA I. ADAMS; AMELIA BELLAGAMA; AUGUST SCHROEDER; ANNIE SCHROEDER; FERDINAND AUBUCHON; MARTIN AUBUCHON; LOUIS AUBUCHON; THEODORE AUBUCHON; ELLEN P. AUBUCHON; LAURA AUBUCHON; PAUL AUBUCHON; LAWRENCE V. TESON; CATHERINE TESON; IGNATIUS LAJEUNESS; MALINA LAJEUNESS; FRANK LARAMIE, also known as FRANK LARAMINE; FRANCES LARAMIE, also known as FRANCES LARAMINE; ST. STANISLAUS SEMINARY, a Corporation; WALTER F. MASCHMIDT and MINNIE MASCHMIDT.— 119 S. W. (2d) 773.

Division One, September 17, 1938.*

*NOTE: Opinion filed at September Term, 1937, April 1, 1938; motion for rehearing filed; motion overruled at May Term, 1938, May 26, 1938; motion to transfer to Court en Banc filed; motion overruled at September Term, 1938, September 17, 1938.

*Herbert W. Ziercher* and *William M. Fitch* for appellants; *Malcolm I. Frank* of counsel.

*Arthur U. Simmons* and *Edwin Rader* for Frank and Frances Laramie.

*Bloebaum & Bloebaum* for Louis and Paul Aubuchon.

*Robert F. Stanton* and *Walter Wehrle* for St. Stanislaus Seminary.

*Walter Wehrle* for Lawrence and Bertha Adams, August Schroeder, Annie Schroeder, Ferdinand Aubuchon, Martin Aubuchon, Theodore Aubuchon, Ellen P. Aubuchon and Lawrence and Catherine Teson.

BRADLEY, C.—March 16, 1932, plaintiffs filed a petition (against 23 defendants) in the Circuit Court of St. Louis County to determine title to 1486 acres of land. The description is by metes and bounds, courses and distances. An amended petition alleges all of the essentials in the ordinary petition to determine title, and these further allegations not in the usual petition of the kind; (1) That the main body of the land was originally two separate islands in the Missouri River, which islands had been surveyed and sectionized by the United States; that afterwards and by action of the Missouri River the islands, by accretion or otherwise, came together by new made land; that the main channel of the Missouri River was originally between the islands and the St. Louis County shore; that afterwards and many years ago the main channel of the river changed to the north side of the islands, and between said islands and the St. Charles County shore; that said islands after the change in the channel of the river were rapidly extended to the St. Louis County shore; that such island accretions continued until the island land met the south bank of the river.

(2) Plaintiffs further allege that defendants have no record title to any of the lands described in the petition; that notwithstanding that defendants have no record title to the lands described, they have from time to time made oral claims and asserted that they had certain rights, titles, and estates in the lands; that by reason of such oral claims defendants have cast a cloud upon plaintiffs' title; (3) that the proof necessary to establish plaintiffs' title would

be the same in determining the claim of each of the defendants, and that the claims of all defendants can be determined in one proceeding and that by so doing a multiplicity of suits would be avoided.

(4) It is alleged that the claims of defendants, and each of them, are confusing and constitute many separate and distinct claims, but all of said claims would be governed by the same general facts and evidence and controlled by the same principles and rules of law as to the validity of their respective claims and that all of said claims may be settled and finally established and the rights of the parties ascertained and determined, and the boundary lines between the lands found to be owned by the plaintiffs and the lands, if any, found to be owned by the defendants, should be established by the court as a court of equity, and that the parties should be required by the judgment of the court to recognize the boundary lines established by the finding; that the parties should be enjoined from interfering with the boundary lines so found and established and the title to the lands herein described should be quieted.

(5) It is alleged that "this proceeding to try and determine the title and establish boundary lines is in the nature of a bill of peace against the defendants, and each of them."

As a final paragraph plaintiffs allege that they have no adequate remedy at law. In the prayer the court is asked (1) to determine the title between plaintiffs and defendants severally; (2) to ascertain the boundary lines of plaintiffs' lands; (3) to restrain defendants from claiming orally, or otherwise, to have any right, title, interest or estate in the lands which may be adjudged by the court to belong to plaintiffs; (4) to remove any cloud which appears upon plaintiffs' title caused by the oral claims of defendants; (5) that defendants be restrained from causing further clouds on plaintiffs' title by claiming to have some right, title, interest or estate in and to the lands which may be adjudged by the court to be owned by plaintiffs.

Five defendants did not plead or appear. Three filed general denials. Other defendants, in amended answers, answered alike, but separately (except as to husband and wife), by general denial, and a second count alleging (1) that plaintiffs did not own and never owned the land described in the respective answers; (2) that the respective defendants owned the land described in the respective answers; (3) that plaintiffs, at time of filing petition, knew "the nature and character" of the claims of the respective defendants; (4) that each defendant was the record and fee owner of the land described in his answer and was in adverse possession, and had been in such possession for more than thirty years before the suit was filed; (5) that accretions "formed more than thirty years ago . . . added to the shore line" of the tract of each defendant; (6) that the respective defendants had been in adverse possession

of the land described in the respective answers for more than ten years. Also the twenty years Statute of Limitation was pleaded in each answer. Also, each answer contained the substance of the following paragraph from the amended answer of Lawrence V. Teson and wife:

"These defendants further state that they claim no title to, interest in, or possession of any other land described in plaintiffs' petition and disclaim any title to, interest in or possession of any other land described in plaintiffs' petition except the land specifically described herein as being the property of these defendants; that they have no claim or interest in common with any defendant named in plaintiffs' petition or with any other person whatsoever in said land. And these defendants claim the aforesaid described (in the answer) property against all persons; that this action as to these defendants is severable, and that their defense to this cause of action is separate and distinct from that of their codefendants, and for that reason these defendants demand a separate trial as to the issues between plaintiffs and them." ·

The prayer of each answer is for "judgment and costs." Plaintiffs in reply denied generally the new matter in the answers.

Defendants, who filed answer in two counts, and after the answers were filed, filed what was termed a plea in abatement. This plea asked that plaintiffs' "cause of action be abated and for judgment on the pleadings." The grounds alleged are: (1) That in each separate answer (of those filing plea in abatement) "each defendant alleges and states that he owns, individually and in severalty, and not jointly one with the other defendants, the separate piece or pieces of land or real estate described in each of the separate answers; that he does not claim any title or interest in the whole tract described in the petition, nor any interest in any part of said land, except that portion which is described and set out in the answer of said individual defendant as being the property in severalty of said defendant; (2) that in said answer it is also alleged that said defendants do not own any interest or claim any title to the separate individual tracts of land separately described in the answers filed by the other defendants herein, and that he has no claim or interest in common with any defendant or with any other person whatsoever in said land; (3) these defendants further state that this action, as to these defendants and each of them, is severable and that these defendants' defense to this action is distinct from that of each other or of any of their co-defendants; and (4) these defendants further state that by reason thereof, there is a misjoinder of causes of action and of parties defendant and a separate cause of action should have been brought against the different groups of defendants jointly interested, or severally claiming an adverse interest in any one body of the land, and therefore, these defendants are entitled to an order of this court

sustaining this plea in abatement, and for judgment in their favor on the pleadings.''

The prayer of what is called the plea in abatement is that ''plaintiffs' cause of action be abated, and for a judgment in their favor and against the plaintiffs, on the pleadings.'' A hearing was had on these pleas and they were sustained, and plaintiffs' petition dismissed. The judgment of dismissal does not recite the grounds upon which the pleas in abatement were sustained, but plaintiffs say in their statement that the conclusion reached by the trial court was on the theory that in the petition there was a misjoinder of causes of action and of defendants. Plaintiffs filed motion to set aside the judgment and order sustaining the pleas in abatement and dismissing the petition. The prayer of this motion also included a request for a judgment on the merits, in favor of plaintiffs, on the pleadings. The motion was overruled and plaintiffs appealed.

A part of the lands claimed by plaintiffs originally consisted of two islands in the Missouri River. As we understand, plaintiffs' claims are about as follows: The channel originally ran between these islands and what we may term the south shore line of the river. The channel shifted, in time, so as to run north of the islands, and through the years the area between the islands and the old south shore line filled, and plaintiffs' claim to some of the land south of the original south line of the islands, overlaps the claims of the respective defendants, whose lands are along the old south shore line of the river.

The court, over objection of plaintiffs, heard evidence on the plea in abatement. This evidence was all to the effect that as to defendants who joined in such plea, there was nothing in common, except that they were codefendants. That is, each of these defendants claimed no interest in the lands described in plaintiffs' petition, except that particular land described in the respective answers.

Plaintiffs' chief contention is that the plea in abatement ''presented no issue whatever of misjoinder,'' and that the court erred in sustaining the plea and dismissing plaintiffs' petition, and erred in not entering judgment on the merits for plaintiff on the pleadings.

■ This cause does not require any extended discussion. The cause itself and the steps taken so nearly parallel the situation in Chaput et al. v. Bock et al., 224 Mo. 73, 123 S. W. 16, and Peniston et al. v. Hydraulic Press Brick Co. et al., 234 Mo. 698, 138 S. W. 532, that we think those cases should rule the present one. In the Chaput case plaintiffs filed suit to determine title to a tract of land in St. Louis, which tract was 385 feet in width, and 7800 feet in length. The 498 defendants filed separate answers. These answers were a general denial; and ''that each defendant claims only the particular lot by him specifically described; that he owns this lot in severalty, and that none of the other defendants claim any interest therein;''

and the ten and thirty years Statutes of Limitations were pleaded. The reply was a general denial, except "the averment in said several answers contained, to the effect that each of said several defendants claims 'to be the owner in fee of the separate parcel or lot of ground or land embraced in the United States Survey No. 1583,' or words to that effect, but plaintiffs deny that said several defendants own such several tracts or parcels claimed by them."

When the Chaput case came on for trial, the opinion recites that "counsel for the plaintiffs, to facilitate a decision upon the matter pleaded in abatement, admitted broadly, if it was not already admitted by the reply, that each defendant claims in severalty the particular lot occupied by him, and makes no claim to any other part of the tract. Thereupon the defendants moved for judgment upon the pleadings and admissions made by plaintiffs' counsel. The court sustained the defendants' motion and entered an order dismissing plaintiffs' petition without prejudice."

On appeal in the Chaput case, the authorities were reviewed and the action of the trial court was sustained. Quoting from Mullen v. Hewitt, 103 Mo. 639, 15 S. W. 924, the court said: "There is no such common purpose or design alleged as will justify the holding of one set of these defendants in court while plaintiff is litigating with others over matters in which they are not even charged with any complicity. Our statute is liberal; but it will not authorize the indiscriminate blending of actions in which the defendants are not the same, and have no common interest with the plaintiff or each other."

The Peniston case, supra, was to quiet title and there were 475 defendants. The petition alleged that the plaintiffs owned the land in fee simple and that defendants claimed some title, interest or estate adverse to plaintiffs. The answers were separate and consisted of a general denial, and a further pleading that each defendant was the owner of the land described in his answer, and that he claimed no interest in any other land described in the petition, and had no interest in common with other defendants. Also, the ten and thirty years Statutes of Limitations were pleaded. The reply was a general denial and an admission that no one of the defendants claimed an interest in all the land described in the petition, and that each defendant claimed only the land described in his answer. Defendants filed motion for judgment on the pleadings, the grounds being "that in each of the answers each defendant sets forth that he owns in severalty and not jointly, one with the other, the separate piece or pieces of land described in the separate answers; that no defendant claims any title or interest in the entire tract described in the petition, nor any individual interest therein, nor any interest in any other part of said tract except that portion which in each answer is set out as being the property in severalty 'of the respective de-

fendant;' that said allegations in each of the answers are admitted to be true by the reply filed in the cause; and that there is a misjoinder of parties defendant, and a misjoinder of causes of action.''

The motion was sustained and the petition dismissed. In ruling the Peniston case, the court reviewed the Chaput case. It seems that the pleader in the present case endeavored to so frame the amended petition as to avoid the consequences that came to the Chaput and Peniston cases on the pleadings. Stress is laid by plaintiffs upon the allegation in the petition of avoidance of a multiplicity of suits. Other allegations in the petition are also invoked in support of the contention that the cause is in equity.

In the Peniston case, supra, the subject of multiplicity of suits was under consideration, and of this subject the court said: ''He (counsel) lays marked stress on the rule permitting a suit in equity for the very purpose of avoiding a multiplicity of suits. As we grasp it, the force of his argument is that if his petition be held multifarious, that holding shuts the door on the right of his clients to go into equity to avoid such multiplicity. But we take the true rule to be that a party, appealing to equity to avoid a multiplicity of suits, must still obey the rules of good pleading and steer clear of the vice of multifariousness. The reason that equity takes cognizance in order to avoid a multiplicity of suits is the common sense of it, viz., *convenience*. Now, convenience within the purview of the rule, faces three ways—one face turns towards plaintiffs, one towards defendants, and another towards the court charged with the duty of administering justice, not pell-mell or by chance-medley, but in orderly fashion by rule and good sense. Both parties litigant must be considered. If any preference is given to either, on mere *convenience*, it should be to defendants, since plaintiffs go into court voluntarily, defendants (speaking in fireside figure) are pulled in by the ears.''

About the only distinction between the situations that obtained in the Chaput and Peniston cases, supra, and the present case, is that in those cases the plaintiffs admitted that no one of the defendants claimed an interest in all the land described in the petitions, and that each defendant claimed only the land described in the respective answers, while, in the present case, plaintiffs by their reply, a general denial, denied such allegations in the respective answers. It was this situation, no doubt, that moved defendants to file what they termed a plea in abatement and allege therein as they did, and said situation, no doubt, moved the trial court to hear evidence on the subject of misjoinder. It is true that the plea in abatement asked for judgment on the pleadings, and it is true that in a strict motion for judgment on the pleadings, parol evidence is not admissible. Ordinarily a motion for a judgment on the pleadings contemplates a judgment on the merits, while here the court did not render such judgment, but merely dismissed plaintiffs' petition.

The plea in abatement was the way which defendants moved to get at the question of misjoinder of defendants and causes of action, which did not appear on the face of the petition. And since misjoinder did not appear on the face of the petition and was not admitted, plaintiffs say that defendants should have raised such question by answer, and that if they did not do so, they waived the question of misjoinder. Section 770, Revised Statutes 1929 (Mo. Stat. Ann., sec. 770, p. 1000), provides that "the defendant may demur to the petition, when it shall appear on the face thereof, either . . . or, fifth, that several causes of action have been improperly united." Section 774, Revised Statutes 1929 (Mo. Stat. Ann., sec. 774, p. 1010), provides: "When any of the matters enumerated in Section 770 do not appear upon the face of the petition, the objection may be taken by answer. If no such objection be taken, either by demurrer or answer, the defendant shall be deemed to have waived the same, excepting only the objection to the jurisdiction of the court over the subject matter of the action, and excepting the objection that the petition does not state facts sufficient to constitute a cause of action."

As we read the separate answers, each and all of them raised the question of misjoinder. It is true that these answers did not contain the term "misjoinder," but pleaded, as appears, supra, in the answer of Lawrence V. Teson and wife, all the necessary facts which, if true, would constitute misjoinder of causes of action and misjoinder of defendants. In this situation, the so called plea in abatement was no more than a request to be heard on the question of misjoinder. Misjoinder did not appear on the face of plaintiffs' petition, and defendants could not demur. In this situation defendants, as we rule, raised the question by answer. Having raised the question by answer, they did not waive the question by proceeding to trial on the merits, as did the defendant county in Cullen v. Atchison County (Mo.), 268 S. W. 93, where the question of misjoinder was raised in the answer. Instead of so proceeding, defendants in the present case asked to be heard on the plea of misjoinder in the answers.

A bill in equity is said to be multifarious "when distinct and independent matters are improperly joined, whereby they are confounded, as the writing in one bill of several matters perfectly distinct and unconnected, against one defendant, or the demand of several matters, of a distinct and independent nature, against several defendants in the same bill." [Perkins v. Baer, 95 Mo. App. 70, l. c. 75, 68 S. W. 939; Clark v. The Covenant Mut. Ins. Co., 52 Mo. 272.]

" 'Multifariousness as to matter consists in uniting in the same bill distinct and disconnected subjects, matters or causes. Multifariousness as to parties consists in joining in the same suit, either as complainants or defendants, parties who are without a common interest in the subject of the litigation and have no connection with each other,'

and it is said that a defendant cannot successfully complain of multifariousness unless he can show 'he is brought in as a defendant upon a record, with a large portion of which he has no connection whatever.' '' [Perkins v. Baer, supra.]

It is not necessary to determine whether plaintiffs' cause is in equity or at law. It is stated in the Peniston case, supra (234 Mo. l. c. 711), that "a party appealing to equity to avoid a multiplicity of suits, must still obey the rules of good pleading and steer clear of the vice of multifariousness."

It is our conclusion that the judgment should be affirmed and it is so ordered. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM.—The foregoing opinion by Bradley, C., is adopted as the opinion of the court. All the judges concur.