In re the MARRIAGE OF Ann
S. BUSCH and Adolphus
August Busch, IV

Ann S. Busch, Petitioner/Appellant,

v.

Adolphus August Busch, IV,
Respondent/Respondent.

No. ED 93255.

Missouri Court of Appeals,
Eastern District,
Division One.

April 27, 2010.

 

 
 
 
 
 
 

 
 
 
 

 

 
 
 
 
 
 
 
 
 
 

 
 
 
 
 
 
 
 
 
 
 
 
 

Allan H. Zerman, Stephanie L. Jones, Joseph J. Kodner, Zerman & Mogerman LLC, Clayton, MO, for appellant.

Ellen W. Dunne, Blitz Bardgett & Deutsch, L.C., St. Louis, MO, for respondent.

KATHIANNE KNAUP CRANE, Presiding Judge.

Wife filed a motion to enforce a dissolution decree. Husband moved to dismiss wife's motion. The trial court granted husband's motion to dismiss, treated it as a motion for judgment on the pleadings, and entered judgment on the pleadings. Wife challenges the entry of judgment on the pleadings, arguing that her motion stated a claim for relief and raised issues of fact that could not be resolved by judgment on the pleadings. We reverse and remand.

On July 7, 2008, wife, Ann S. Busch, filed a motion to compel husband, Adolphus A. Busch, IV, to comply with the parties' dissolution decree. In her motion, wife alleged that the parties had been granted a judgment of legal separation on July 21, 2004 that incorporated the parties' Property Settlement and Separation Agreement (the Property Agreement). She further alleged that on April 7, 2008, the judgment of legal separation was converted by consent to a judgment of dissolution, and the Property Agreement was incorporated therein. As relevant to this appeal, wife alleged that husband had failed to comply with specific provisions of the Property Agreement relating to her awards of one-half of: (1) husband's interest in certain limited liability companies and a limited partnership; (2) husband's interest in the preferred stock of Kinexus Corporation; (3) two promissory notes payable to husband from Eager Road Associates, Inc.; and (4) husband's beneficial interest in one-half of the proceeds of a note receivable from Silver Eagle Distributors, Inc., and husband's obligations on a note payable to Silver Eagle Distributors, Inc. Wife alleged that Paragraph 8.3 of the Property Agreement ordered each party to cooperate in furnishing to the other party all information in his or her respective possession or control as is required by each of them that may be necessary for the timely filing of state and/or federal income tax returns. Wife further alleged that each party agreed in Paragraph 10.4 of the Property Agreement to execute all documents and to do all things necessary to accomplish and give effect to the provisions of the Property Agreement. Wife sought an order compelling husband to provide to her all documentation and information to which she was entitled under the Property Agreement, along with an award of attorney's fees and costs, and such other relief to which she may be entitled.

Husband subsequently moved to dismiss wife's motion to compel. After hearing argument, the trial court entered a judgment in which it granted husband's motion to dismiss, treated it as a motion for judgment on the pleadings, and entered judgment on the pleadings. The trial court subsequently overruled wife's motion to amend the judgment. Wife appeals.

## DISCUSSION

On appeal, wife first asserts that the trial court erred in granting judgment on

the pleadings in husband's favor because her motion to compel stated a claim for relief and raised numerous factual issues, making a judgment on the pleadings inappropriate. Because this point is dispositive, we do not reach wife's remaining point.

## APPLICABLE LAW

### 1. *Judgment on the Pleadings*

The trial court treated the motion to dismiss as a motion for judgment on the pleadings and entered judgment on the pleadings. A motion for judgment on the pleadings is authorized by Rule 55.27(b), which provides:

> **Motion for Judgment on the Pleadings.** After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 74.04, and all parties shall be given reasonable opportunity to present all materials made pertinent to such a motion by Rule 74.04.

A motion for judgment on the pleadings is of common law origin, and it is not favored by the courts. *McIntosh v. Foulke*, 360 Mo. 481, 228 S.W.2d 757, 761 (1950). Such a motion may be sustained only when,

> "under the conceded facts, a judgment different from that pronounced could not be rendered notwithstanding any evidence which might be produced. In other words, it cannot be sustained unless, under the admitted facts the moving party is entitled to judgment, without regard to what the findings might be on the facts upon which issue is joined."

*Id.* (quoting 41 Am.Jur. *Pleading* § 336). Judgment on the pleadings is only appropriate when the question before the court is strictly one of law. *Eaton v. Mallinckrodt, Inc.*, 224 S.W.3d 596, 599 (Mo. banc 2007). "'The question presented by a motion for judgment on the pleadings is whether the moving party is entitled to judgment as a matter of law on the face of the pleadings.'" *Id.* (quoting *RGB2, Inc. v. Chestnut Plaza, Inc.*, 103 S.W.3d 420, 424 (Mo.App.2003)). A trial court should not sustain a motion for judgment on the pleadings if a material issue of fact exists. *Madison Block Pharmacy v. U.S. Fidelity*, 620 S.W.2d 343, 345 (Mo. banc 1981).

A right to judgment on the pleadings must be established by the allegations in the opposing party's pleadings. Matters quoted in, attached to, or incorporated by reference into the pleadings may be considered. *McIntosh*, 228 S.W.2d at 761; *Messner v. American Union Ins. Co.*, 119 S.W.3d 642, 648 (Mo.App.2003). However, matters not properly incorporated into the pleadings may not be considered. *Messner*, 119 S.W.3d at 648–49. A trial court may not consider unpleaded matters by taking judicial notice of them. *Ralph D'Oench Co. v. St. Louis County Cleaning & Dye. Co.*, 358 Mo. 1072, 218 S.W.2d 609, 611–12 (1949).

The party that moves for judgment on the pleadings admits, for purposes of the motion, the truth of all well-pleaded facts in the opposing party's pleadings. *Eaton*, 224 S.W.3d at 599; *State ex rel. Nixon v. American Tobacco Co.*, 34 S.W.3d 122, 134 (Mo. banc 2000); *Madison Block*, 620 S.W.2d at 345. The motion admits only the well-pleaded facts, not the pleader's conclusions or construction of the subject matter. *Hunter v. Delta Realty Co.*, 350 Mo. 1123, 169 S.W.2d 936, 938 (1943); *Grove v. Sutliffe*, 916 S.W.2d 825, 828 (Mo.App.1995); *Helmkamp v. Ameri-*

can *Family Mutual Insurance Co.*, 407
S.W.2d 559, 565–66 (Mo.App.1966).

A motion for judgment on the
pleadings shares similarities with a motion
to dismiss for failure to state a claim, but it
is also distinct. A defending party who
makes a motion for judgment on the plead-
ings is in the same position as a defending
party who makes a motion to dismiss for
failure to state a claim. In both situations,
the defending party's position is that even
if all of plaintiff's well-pleaded facts are
true, they are insufficient as a matter of
law. *Nixon*, 34 S.W.3d at 134. However,
a motion to dismiss is made before the
filing of an answer; whereas a motion for
judgment on the pleadings is not made
until the pleadings are closed. Further, if
a court sustains a motion to dismiss, it
"shall freely grant leave to amend." Rule
67.06. *See Costa v. Allen*, 274 S.W.3d 461,
463–64 (Mo. banc 2008). However, a mo-
tion for judgment on the pleadings con-
templates a final judgment on the merits.
*Essen v. Adams*, 342 Mo. 1196, 119 S.W.2d
773, 777 (1938).

When the defending party is
the moving party for judgment on the
pleadings, the allegations of the opposing
party's petition or motion seeking relief
are admitted for the purposes of the de-
fending party's motion. *Nixon*, 34 S.W.3d
at 134; *RGB2, Inc.*, 103 S.W.3d at 424.
The facts pleaded in the defending party's
responsive pleading are not admitted and
are not self-proving. *RGB2, Inc.*, 103
S.W.3d at 424. It is error for a trial court
to grant judgment on the pleadings based
on a factual allegation in the responsive
pleading. *Id.* at 424–25.

In this case, wife filed the mo-
tion to compel, and husband filed the mo-
tion to dismiss that the trial court treated
as a motion for judgment on the pleadings.
Therefore, wife's factual allegations are
deemed admitted, and husband's factual
allegations are deemed denied for the pur-
poses of determining whether husband is
entitled to judgment on the pleadings.
*See id.* We treat the Property Agreement
as incorporated by reference into wife's
motion because it was part of the trial
court file and pleaded in the motion. *See
Twehous Excavating v. L.L. Lewis*, 295
S.W.3d 542, 546 (Mo.App.2009).

We will affirm a judgment on the
pleadings only "if the facts pleaded by the
petitioner, together with the benefit of all
reasonable inferences drawn therefrom,
show that petitioner could not prevail un-
der any legal theory." *Messner*, 119
S.W.3d at 644. *See also Lynch v. Mis-
souri Dept. of Corrections*, 267 S.W.3d 796,
798 (Mo.App.2008). Conversely, we will
reverse if, on the face of the pleadings, an
issue of fact exists, *see McGuire v. Di-
rector of Revenue*, 174 S.W.3d 87, 89 (Mo.
App.2005), or if the allegations in the non-
movant's pleadings show that the non-mov-
ant could prevail under some legal theory.
*See Lone Star Industries, Inc. v. Howell
Trucking, Inc.*, 199 S.W.3d 900, 906–07
(Mo.App.2006); *Messner*, 119 S.W.3d at
646–47.

2. *Enforcement and Interpretation of
Settlement Agreements*

The Property Agreement
sought to be enforced was part of a settle-
ment and separation agreement incorpo-
rated into a dissolution decree. Parties to
a settlement agreement incorporated into
a dissolution decree may bind themselves
to obligations that the dissolution court
lacks authority to impose. *Wheeler v.
McDonnell Douglas Corp.*, 999 S.W.2d 279,
287 (Mo.App.1999). *See also Bushell v.
Schepp*, 613 S.W.2d 689, 692 n. 1 (Mo.App.
1981). When a settlement agreement has
been incorporated into a dissolution de-
cree, it can be enforced by the courts like

any other judgment. Section 452.325.5 RSMo (2000); *In re Marriage of Bolton v. Bolton*, 950 S.W.2d 268, 271 (Mo.App. 1997). A party states a cause of action for enforcement of the provisions of a judgment by pleading facts showing a duty under the judgment or under any applicable law and the failure to perform that duty. *See Atkinson v. Atkinson*, 185 S.W.3d 780, 782 (Mo.App.2006).

▮▮▮ Because the Property Agreement was incorporated into wife's motion to compel, its interpretation was properly before the court on a motion for judgment on the pleadings. *See Twehous*, 295 S.W.3d at 546–47. Interpretation of a settlement agreement is a question of law that we review *de novo*. *Royalty v. Royalty*, 264 S.W.3d 679, 683 (Mo.App.2008). We interpret the unambiguous provisions of a settlement agreement from the words of the agreement alone, without the use of extrinsic evidence. *Bolton*, 950 S.W.2d at 271. When the parties have been represented by counsel in the preparation and execution of their agreement, we give the words used their established legal meaning. *Keltner v. Keltner*, 589 S.W.2d 235, 238 (Mo. banc 1979); *Roberts v. Roberts*, 654 S.W.2d 613, 614 (Mo.App.1982). Further, we must read the agreement as a whole:

> A separation agreement is an integrated writing; each provision bears on the others. *In Re Marriage of Linnenburger*, 741 S.W.2d at 878. If a court were to enforce some of the terms of the agreement while ignoring others, the agreement may not only become imbalanced, but may also become an agreement not in accord with what the parties originally had intended it to be. *Id.* Thus, the terms of a contract must be read as a whole. *Village of Cairo v. Bodine Contracting Company*, 685 S.W.2d 253, 264 (Mo.App.1985). "Each

term is construed to avoid an [e]ffect which renders other terms meaningless: a construction which attributes a reasonable meaning to all of the provisions of the agreement is preferred to one which leaves some of them without function or sense." *Id.*

*Bolton*, 950 S.W.2d at 271. *See also Andes v. Albano*, 853 S.W.2d 936, 941 (Mo. banc 1993); *Wheeler*, 999 S.W.2d at 285.

### 3. *Fiduciary Duty*

▮▮▮ If a settlement agreement requires a spouse to hold property for the other spouse's benefit, the spouse holding the property has a fiduciary duty to the other spouse with respect to that property. *See McCreary v. McCreary*, 954 S.W.2d 433, 451 (Mo.App.1997); *First Nat. Bank v. Eucalyptus*, 752 S.W.2d 456, 459–60 (Mo.App.1988). *See also Marshall v. Grauberger*, 796 P.2d 34, 36–38 (Col.App. 1990). Further, if a party retains property belonging to another, the retaining party has a fiduciary duty to the owner with respect to that property. *See Prindable v. Walsh*, 69 S.W.3d 912, 915, 917 (Mo.App. 2002). Thus, if a settlement agreement or a judgment has awarded property to a spouse, with no direction to the other spouse to continue to hold it, but the other spouse retains the property, the retaining spouse owes a fiduciary duty to the other spouse with respect to that property.

▮▮▮ A spouse's fiduciary status gives rise to certain legal duties, including the obligation to maintain complete and accurate records of the property held, *McCreary*, 954 S.W.2d at 451, and account for his or her handling of the beneficiary's property, *Zelch v. Ahlemeyer*, 592 S.W.2d 482, 485 (Mo.App.1979); *Eucalyptus*, 752 S.W.2d at 459–60. A fiduciary is also required to furnish records and information about the nature and amount of the trust property upon request. RESTATEMENT

(Second) of Trusts § 173 (1959).[1] And, a "beneficiary is always entitled to such information as is reasonably necessary to enable him to enforce his rights under the trust or to prevent or redress a breach of trust." Restatement (Second) of Trusts, *supra*, at § 173 cmt. c. *See also Ramsey,* 914 S.W.2d at 388; *Fletcher v. Fletcher,* 253 Va. 30, 480 S.E.2d 488, 491 (1997); *In re Estate of Dryden,* 155 Neb. 552, 52 N.W.2d 737, 745 (1952).

## ANALYSIS

In her motion to compel, wife alleged that husband failed to comply with a number of provisions of the Property Agreement pertaining to the division of certain property. In its judgment, the court organized its findings and conclusions according to each property interest, and the parties have briefed the issues in this format. Accordingly, we will follow that format in our analysis.

1. *Limited Liability Companies and Partnership*

 a. *Wife's Allegations*

In paragraph 2 of her motion, wife alleged that Paragraph 4.4 of the Property Agreement awarded to her one-half of husband's ownership interest in the following limited liability companies and partnership: Columbia Lakes, LLC; Seventy Seventy, LLC; Belleau Development, LLC; Regents III, LLC; Eager Road Associates, LLC; and WNC Missouri Tax Credits XXXI, LP. She alleged that husband was ordered to direct the appropriate responsible party or entity to make the necessary transfers to divide husband's ownership interests with wife. She also alleged that beginning January 1, 2004, each party was entitled to one-half of all distributions and losses attributable to their respective ownership interests. She further alleged that husband was ordered to hold property that could not be divided in trust, and in that circumstance, husband was ordered to provide wife with a letter from each entity setting forth all distributions made to him.

In paragraph 3 of her motion, wife alleged that she had repeatedly requested that husband direct the appropriate person or entity to transfer one-half of husband's ownership interests in these companies and partnership, and she alleged, "upon information and belief," that husband had made no efforts to effectuate those transfers and had not placed her interests in trust for her benefit. Finally, she alleged that husband had failed to provide her with a letter from each entity setting forth all distributions made to him by that entity.

 b. *Trial Court's Findings and Conclusions*

In its judgment, the trial court determined that judgment on the pleadings based on wife's allegations in paragraphs 2 and 3 of her motion was warranted for several reasons. It first found that the Property Agreement required husband to direct the appropriate officer or entity to transfer the interest only if it was permissible under the books and records of the entity and if the entity's management found the division to be practical. It also

---

**1.** Section 173 of the Restatement (Second) of Trusts provides:

The trustee is under a duty to the beneficiary to give him upon his request at reasonable times complete and accurate information as to the nature and amount of the trust property, and to permit him or a person duty authorized by him to inspect the subject matter of the trust and the accounts and vouchers and other documents relating to the trust.

*See also Ramsey v. Boatmen's First Nat. Bank of Kansas City,* 914 S.W.2d 384, 388 (Mo.App. 1996).

found that husband did not have a majority interest in any of these companies or the partnership because the Property Agreement showed husband had less than 50% ownership interest in each entity, and, as a result, husband could not control the management determinations of these entities. It further found that wife had acknowledged in the Property Agreement that she was not a shareholder of any of the companies and partnership, and concluded that wife therefore lacked standing to seek a court order requiring these nonparty entities to divide husband's interest. The trial court also characterized wife's allegations as requesting relief directly from the various entities, which were not parties to the case. The trial court concluded that it had no jurisdiction to grant the relief and that this lack of jurisdiction justified judgment on the pleadings.

The trial court next found that wife failed to plead that it was permissible to divide any of the various entities and that, as a result, she failed to plead that "the prerequisites or conditions precedent to any duty on the part of [husband] have been met." The trial court also found that wife failed to plead that husband had received any letters from the various entities, and that, as a result, the court could not compel husband to provide something he had not received. It further found that it lacked jurisdiction over the entities to require any of them to provide such a letter to husband because the entities were not parties to the action. Finally, the trial court found that that the Property Agreement did not require husband to "formally create a trust" in which to place half of his interest in the entities that could not be divided, and that it could not compel husband to comply with an order or obligation that was not part of the Property Agreement.

### c. Applicable Provisions of Property Agreement

Paragraph 4.4 of the Property Agreement awarded to wife one-half of husband's ownership interest in the limited liability companies and partnership listed above and, as relevant to paragraphs 2 and 3 of wife's motion, provided:

1..... The parties recognize that, in one or more instances, the relevant ownership agreements (*e.g.* operating agreement, management agreement, partnership agreement, etc.) may not permit the parties to divide [husband's] ownership interest in kind on the books and records of the business; in other instances, management of a particular business may consider such a division in kind to be impractical or burdensome (*e.g.* because of the necessity to renegotiate and/or redraft bank or other financing documents). To the extent that a division in kind on the books and records of the business is permissible and management, in its sole discretion, considers such a division to be practical, [husband] shall direct the appropriate corporate officer, general partner, administrator, trustee or other responsible party (or entity) to make the necessary transfer in order to equally divide his ownership interest with [wife], such that after said transfer, [husband] will be the sole record owner of one-half (1/2) of said ownership interest and [wife] shall be the sole record owner of one-half (1/2) of said ownership interest.

\* \* \*

3. To the extent that any or all of the aforesaid business interests are not to be divided in kind between the parties on the books and records of the business as referenced in subparagraph 1, then [husband] shall hold one-half (1/2) of his ownership interest in trust for the benefit of [wife]. With respect to each such

business interest ... [husband] will account and pay to [wife] one-half (1/2) of the amount of all distributions received by [husband]. In this regard, [husband] shall, within fifteen (15) days after receipt of each distribution, pay to [wife] one-half (1/2) of the amount of said distribution. In addition, [husband] will provide to [wife] a copy of his K–1 statements each year for each entity, promptly upon receipt, and a confirming letter from each company setting forth all distributions.

Section 8 of the Property Agreement covered taxes. Paragraph 8.2 of this section provided in part:

8.2 Beginning January 1, 2004, each party shall, for income tax purposes, report on his/her individual income tax returns (and pay all applicable taxes) all income generated, and all capital gain realized, from the ownership, operation, investment, sale, transfer or other disposition of any asset awarded to said party pursuant to this Agreement, and all other distributions of income flowing to each party from any asset (or portion thereof) awarded to either party therein.

Paragraph 8.3 of the Property Agreement provided:

8.3 The parties agree that the tax basis attributable to each property affected by this Agreement shall be the tax basis which the property had prior to the dissolution of their marriage. The parties agree that if and when any additional tax liability is incurred as a result of a sale or exchange of property divided under the terms of this Agreement, the party receiving the property, unless otherwise specifically stated in this Agreement, shall be responsible for the resulting tax due, if any, and shall hold the other party harmless from any and all such tax liability, including interest and penalties. The parties agree to

cooperate with each other in order to be certain that each of the parties receives complete information concerning the income tax basis, or cost basis, of the respective assets received by each of them pursuant to the terms of this Agreement. Both parties shall cooperate in furnishing to the other person all information in his or her respective possession or control required by each of them which may be necessary for the timely filing of state or federal income tax returns.

Section 10 of the Property Agreement contained the General Provisions. Paragraph 10.4 of this section provided:

10.4 The parties each agree to execute the necessary deeds, waivers, releases and other documents, and to do all other things reasonably necessary, to accomplish and give effect to the provisions of this Agreement.

d. *Analysis*

 Paragraph 4.4 of the Property Agreement gave husband specific duties with respect to wife's one-half interests in the limited liability companies and the partnership. First, he was to direct the responsible parties to make the transfers to divide husband's ownership interests with wife. If the relevant ownership agreement did not permit the division or transfer, or if management decided the division and transfer was impractical or burdensome, then husband was to hold wife's share in trust, pay to her one-half of his distributions, and provide wife with a letter from the entities setting forth the amount of the distributions.

The Property Agreement referred repeatedly to husband's ownership interests in each of these entities. The parties could agree to require husband, who had ownership interests, to direct the appropriate responsible party to make a division

and transfer of husband's ownership interests, whether or not a trial court had the power to do so in a dissolution decree. *See Wheeler,* 999 S.W.2d at 287; *Bushell,* 613 S.W.2d at 692 n. 1. This was husband's duty under the Property Agreement; wife was not seeking to compel non-parties to take any action. Wife's motion alleging her belief that husband had not directed the responsible parties to divide husband's property interests stated a claim for enforcement of this duty. *See Atkinson,* 185 S.W.3d at 782. Whether husband took this action is an issue of fact precluding judgment on the pleadings.

If the property was not divisible for any reasons listed in the Property Agreement and the responsible parties could not accede to husband's direction, then husband was required to hold the property in trust for wife, account to and pay to her one-half of his distributions, and confirm the amounts of those distributions in two ways, one of which was by sending her a letter from each entity confirming the amount of these distributions. Husband's duty to hold the property in trust and husband's duty to provide letters are in dispute in this appeal. We consider them separately.

▮▮▮▮ First, the Property Agreement required husband to hold wife's share of the property in trust if it could not be divided in kind. In addition, even if the Property Agreement had not also specifically provided that husband hold the property in trust, husband had a fiduciary duty to wife with respect to this property because the Property Agreement required husband to hold property awarded to wife. *See McCreary,* 954 S.W.2d at 451. The trial court misapplied the law in entering judgment on the pleadings on the ground that the Property Agreement did not require husband to "formally create a trust."

Next, the Property Agreement required husband to provide the letters setting forth his distributions. This provision, along with the requirement in Paragraph 10.4 that husband do all things "reasonably necessary" to accomplish and give effect to the provisions of the Property Agreement, required husband to provide any letters in his possession or to obtain the letters to the extent he had the power to do so. Wife's motion alleging husband's failure to supply the letters stated a claim for enforcement of this provision. *See Atkinson,* 185 S.W.3d at 782. Whether husband complied with this provision created an issue of fact, precluding judgment on the pleadings.

▮▮▮▮ The trial court also misapplied the law in concluding that wife's failure to plead "conditions precedent" entitled husband to judgment on the pleadings. A condition precedent is an act or event that must exist or occur before a duty to perform arises. *State ex rel. State v. Parkinson,* 280 S.W.3d 70, 76 (Mo. banc 2009) (citing BLACK'S LAW DICTIONARY 293 (6th ed.1990)). The Property Agreement did not require any act or event to occur before husband had a duty to "direct" the entities to make a division and transfer of his ownership interests. Whether the businesses could be divided in kind was not a condition precedent to husband's duty to take this action. Rather, if the response to husband's direction was that his ownership interest in any of the businesses could not be divided in kind, then husband was to hold wife's share in trust.

Finally, wife's request for relief was confined to a request that husband be ordered to take the actions set out in Paragraph 4.4. She did not request that the court direct any non-party to take any action. The trial court erred in entering judgment on the pleadings against wife on the grounds of its lack of jurisdiction and wife's lack of standing with respect to the

allegations about her interests in the limited liability companies and partnership.

## 2. Stock in Kinexus Corporation

### a. Wife's Allegations

In paragraph 4 of her motion, wife alleged that Paragraph 4.2(f) of the Property Agreement awarded her one-half of the shares of preferred stock in Kinexus Corporation (Kinexus), or 534,375 shares. In paragraph 5, wife alleged that she had repeatedly requested husband to transfer or place in her name one-half of his preferred stock in Kinexus "to no avail." She also alleged that husband was claiming that Kinexus was defunct and that husband had failed to provide her with any information to substantiate this claim, including information that would allow her to write off her awarded shares as a loss for tax purposes. In subsequent paragraphs of her motion, wife also alleged the provisions of paragraphs 8.3 and 10.4 of the Property Agreement, as previously set out in this opinion.

### b. Trial Court's Findings and Conclusions

In its judgment, the trial court concluded that wife was not entitled to the information about the status of Kinexus or information relevant to her taxes because the Property Agreement did not require husband to provide wife any information about Kinexus, and that the Property Agreement "merely indicates … that the parties are to receive one-half of all shares that [husband] may have or does have in Kinexus Corporation." It also concluded it lacked jurisdiction to enter an order compelling Kinexus to give wife information because Kinexus was not a party, and it entered judgment on the pleadings for this additional reason.

### c. Applicable Provisions of Property Agreement

Paragraph 4.2(f) of the Property Agreement provides:

4.2 [Wife] shall be and is awarded, and [husband] hereby conveys to [wife] any and all right, title and interest which he may have or does have in the following property:

\* \* \*

(f) One-half (1/2) of the shares of preferred stock in Kinexus Corp. held in the name of [husband] (total number of shares held is approximately 1,068,750).

### d. Analysis

The Property Agreement awarded to wife one-half of husband's preferred stock in Kinexus. It also required husband to execute all documents and "do all other things" reasonably necessary to accomplish and give effect to the Property Agreement. This language would include transferring the shares to her or placing them in her name. Wife's motion alleging that husband had not taken either of these actions was sufficient to state a claim to enforce the transfer. See Atkinson, 185 S.W.3d at 782. It also raised a fact question about whether husband had done all things reasonably necessary to place the stock in wife's name. Husband's argument that his duty was satisfied solely by the conveyance language in the Property Agreement has no merit.

In addition, wife's motion states a claim for any information or documentation in husband's possession or control about the current status of Kinexus so that, if the shares had no value, wife could accurately report a loss or gain on her tax return. The Property Agreement specified that the tax basis of property subject to the Property Agreement was its basis prior to the dissolution. It required husband to provide wife with relevant income tax information, including the tax basis of assets transferred to her under the Property

Agreement, and all information in his possession and control which may be necessary to wife's timely filing of tax returns.

Husband contends he satisfied this obligation under Paragraph 8.3 by telling wife that Kinexus was "defunct;" that he was not required to substantiate this statement; and that because the Property Agreement conveyed the shares to wife, as shareholder, she could obtain the information from Kinexus. We disagree.

■ First, husband did not satisfy his obligations to provide tax information by telling wife the corporation was "defunct."[2] Husband was required to furnish wife with the basis prior to the dissolution, and, because he allegedly retained these shares, any information he had in his possession or control about its value since the dissolution necessary for wife's tax returns. In addition, wife's motion alleged husband's failure to transfer the shares or place them in her name, which allegations establish husband's fiduciary duty to wife with respect to her Kinexus stock. *See Prindable*, 69 S.W.3d at 915, 917; *McCreary*, 954 S.W.2d at 451. As a fiduciary, husband was required to keep complete and accurate records, *McCreary*, 954 S.W.2d at 451, including records of assets held for wife, *Zelch*, 592 S.W.2d at 485, and provide wife with information about the value of her assets on request, *see* RE-STATEMENT (SECOND) OF TRUSTS, *supra*, at § 173.

Second, the pleadings did not establish that wife could independently obtain the Kinexus information as a shareholder. The Kinexus stock was an asset conveyed to wife under the Property Agreement. However, wife's motion alleged that the

shares had not been transferred to her or placed in her name. Thus, wife's allegations support a reasonable inference that she did not have the status of shareholder with respect to Kinexus.

■ Finally, wife's motion sought only information and documents that were in husband's possession or control and husband's performance of the Property Agreement. The trial court erred in entering judgment on the pleadings on wife's claims relating to Kinexus on the ground that it did not have jurisdiction to grant relief on these allegations because Kinexus was not a party.

Wife's motion stated a claim for an order requiring husband to provide the requested information about Kinexus. *See Atkinson*, 185 S.W.3d at 782. It also raised fact issues about whether husband had the requested information about the Kinexus shares in his possession or control and whether he provided the information to her, which also precludes judgment on the pleadings.

3. *Eager Road Promissory Notes*

a. *Wife's Allegations*

■ In paragraphs 6 through 9 of her motion, wife alleged that paragraphs 4.2(g) and 4.2(h) of the Property Agreement awarded to her one-half of two promissory notes receivable (dated April 23, 2003 and April 15, 2003) payable to husband from Eager Road Associates, Inc. She also alleged husband was ordered to pay to her one-half of the principal and interest he received from each of the promissory notes. She further alleged that she requested husband to provide copies of the

2. Further, this argument calls for a resolution of wife's claim on the merits by asking the court to consider matters outside wife's motion. The issue is whether, giving wife the benefit of all reasonable inferences from the

facts alleged in her motion, wife stated a claim for relief; not whether her theory would ultimately be viable. *See A.R.H. v. W.H.S.*, 876 S.W.2d 687, 688 (Mo.App.1994).

two promissory notes to her, as well as a complete accounting of any payments made pursuant to those notes "to no avail." In subsequent paragraphs of her motion, wife also alleged the provisions of paragraphs 8.3 and 10.4 of the Property Agreement, as previously set out in this opinion.

b. *Trial Court's Findings and Conclusions*

The trial court found that nothing in paragraphs 4.2(g) or 4.2(h) required husband to provide wife with copies of the promissory notes or to provide wife with an accounting of payments on the notes, and that such an order would exceed its jurisdiction. The trial court also found that wife had the opportunity to receive the information she sought during discovery before the parties entered into the Property Agreement, and she was precluded from obtaining it now by virtue of Paragraph 10.7 of the Property Agreement. It further found that wife failed to plead that husband had copies of the notes in his possession; that if husband were ordered to produce the notes, he would have to request them from Eager Road Associates, which would compel a non-party to act; and that this was beyond the court's jurisdiction.

c. *Applicable Provisions of Property Agreement*

Paragraphs 4.2(g) and 4.2(h) of the Property Agreement awarded one-half of the amounts received from two promissory notes receivable from Eager Road Associates, Inc., to wife. The relevant portions of those paragraphs provided:

4.2 [Wife] shall be and is awarded, and [husband] hereby conveys to [wife] any and all right, title and interest which he may have or does have in the following property:

\*　　　\*　　　\*

(g) One-half (1/2) of the promissory note receivable from Eager Road Associates, Inc. dated 4/24/03 (total principal amount is $426,278.78). [Husband] will pay to [wife] her one-half (1/2) of all amounts of principal and interest, promptly upon his receipt of any such payments. *[Wife] shall pay all income taxes due on her portion of the note payments.*

(h) One-half (1/2) of the promissory note receivable from Eager Road Associates, Inc. date 4/15/03 (total principal amount is $717,261.96). [Husband] will pay to [wife] her one-half (1/2) of all amounts of principal and interest, promptly upon his receipt of any such payments. *[Wife] shall pay all income taxes due on her portion of the note payments.*

(Emphasis added)

In addition, paragraphs 8.3 and 10.4, previously set out, are relevant to these claims.

Further, the trial court referenced Paragraph 10.7 in the General Provision of the Property Agreement, which provides in part:

Each party acknowledges that he or she has had the opportunity to complete discovery, such as Interrogatories, Requests for Production of Documents, appraisals of business interests, real estate and other assets, and depositions, but has chosen not to do all or some of such discovery.

d. *Analysis*

The trial court erred in basing its judgment on its conclusion that nothing in paragraphs 4.2(g) or 4.2(h) required husband to give wife copies of the promissory notes or account for the payments. The Property Agreement is to be read as a whole. *Bolton,* 950 S.W.2d at 271. Paragraphs 4.2(g) and 4.2(h) each required wife

to pay all income taxes due on her portion of the note payments; Paragraph 8.3 required husband to provide wife with all information in his possession or control required by her to timely file her income tax returns; and Paragraph 10.4 required husband to do all things reasonably necessary to give effect to the provisions of the Property Agreement. In addition, the conveyance of one-half of these notes to wife and the requirement that husband make interest and principal payments to wife were facts that give rise to a finding that husband was a fiduciary to wife for her share of these assets and for any note payments in his possession that belonged to her. *McCreary,* 954 S.W.2d at 451; *Prindable,* 69 S.W.3d at 915, 917. As a fiduciary, husband was required by law to account to wife for the note payments, *McCreary,* 954 S.W.2d at 451; *Zelch,* 592 S.W.2d at 485, and to provide her requested information about trust property, which would include copies of the notes, see RESTATEMENT (SECOND) OF TRUSTS, *supra,* at § 173.

Wife's motion alleging the conveyance of an interest in the notes to her and husband's failure to give her a copy of those notes sufficiently stated a claim for a copy of the notes. *See Atkinson,* 185 S.W.3d at 782. Likewise, wife's motion alleging the award of a one-half interest in the notes and payments, her request for an accounting of the payments, and husband's refusal to provide such an accounting stated a claim for an accounting of those payments. *Id.* In addition, wife's motion created a fact question on whether husband provided an accounting or copies of the notes, which also precludes judgment on the pleadings.

In addition, the trial court misapplied the law in concluding that wife's right to copies of the notes was barred by the discovery waiver. In her motion, wife did not claim a right to property that she did not know about, but could have learned about in discovery. Rather, she was seeking a copy of a document representing an asset that she was awarded, that was disclosed before the Property Agreement was entered into,[3] and that husband was holding for her benefit.

The trial court also erred in basing its entry of judgment on the pleadings on wife's failure to plead that husband had possession of the notes. The notes were described in the Property Agreement as the "Eager Road promissory notes receivable" and were further described by principal amount, date, and payor. The Property Agreement recited husband's agreement to pay to wife one-half of all amounts husband received as principal and interest on these notes. A valid promissory note presupposes delivery to the payee. *See Jeude v. Eiben,* 338 Mo. 373, 89 S.W.2d 960, 971 (1935); *Caviness v. Andes & Roberts Bros. Const. Co.,* 508 S.W.2d 253, 256 (Mo.App.1974); 11 AM.JUR.2D *Bills and Notes* § 270 (1963). The language of the Property Agreement reasonably supports the inferences that husband was the payee on these notes and had possession of them. The trial court misapplied the law in concluding that wife had not stated a claim for copies of the notes because she failed to plead that husband possessed the notes. Whether husband actually had possession of the notes was an issue of fact precluding judgment on the pleadings.

Finally, wife sought only copies of the notes and the accounting of payments from husband. The trial court erred in entering judgment on the pleadings of these claims

---

3. The parties represented in the Property Agreement that "each party has made a full disclosure to the other of all properties and assets owned by them."

on the grounds that Eager Road would have to produce the notes and it had no jurisdiction to compel a non-party to act.

### 4. Silver Eagle Note Payable and Note Receivable

#### a. Wife's Allegations

In paragraph 12 of her motion, wife alleged that Paragraph 4.5 of the Property Agreement awarded to her one-half of husband's beneficial one-half ownership interest in the proceeds (principal and interest) of a ten-year promissory note dated December 2002, between Silver Eagle Distributors, Inc., as obligor, and Donald C. Musick, as obligee, representing $6,750,000.00 in principal awarded to her (Note Receivable). She further alleged that she was awarded one-half of husband's share of a promissory note owed to Silver Eagle Distributors, Inc., as obligee (Note Payable), and was therefore obligated to repay the sum of $750,000.00 as a result of this obligation. She alleged, upon information and belief, that the Note Payable had been satisfied.

In paragraph 13 of her motion, wife alleged that she had repeatedly requested, both individually and through her attorneys, that husband provide her with documentation of the repayment of her share of the Note Payable to Silver Eagle Distributors, Inc. "to no avail."

In paragraph 14 of her motion, wife alleged that Paragraph 4.5 of the Property Agreement awarded to each party one-half of all distributions received by husband from Mr. Musick as a result of husband's beneficial one-half interest in the Note Receivable. She further alleged that both parties were to be issued annual U.S. Treasury Form 1099s detailing each of their taxable distributions and deductible interest expense. In paragraph 15, she alleged she had repeatedly requested that husband provide her with Form 1099s for the years 2004 through 2007 reflecting interest payments received on the Note Receivable "to no avail."

In paragraph 16 of her motion, wife alleged that Paragraph 4.5 of the Property Agreement ordered husband to provide her with an accounting of the amount of principal and interest received by husband pursuant to the Note Receivable. She further alleged she had repeatedly requested that husband provide her with such an accounting "to no avail."

In paragraph 17 of her motion, wife alleged that Paragraph 4.5 of the Property Agreement ordered husband to not assign, transfer, or encumber his portion of the Note Receivable without wife's prior written consent. In paragraph 18, wife alleged, "on information and belief," that husband "impliedly or expressly allowed and/or caused the terms of the [Note Receivable] to be renegotiated," without wife's knowledge or prior consent. She further alleged that as a result of husband's actions or inactions, the length of time for repayment of the Note Receivable had been extended, and the principal and interest amount owed had been reduced. She also alleged that she had repeatedly requested a copy of the renegotiated Note Receivable "to no avail."

#### b. Trial Court's Findings and Conclusions

The trial court found that husband was not a payor or payee on these notes. Rather the court concluded that Silver Eagle Distributors, Inc. (Silver Eagle) and Donald C. Musick were the payor and payee, that they were not parties to the Motion to Compel, and that it had no jurisdiction to order documentation of the repayment or any other act by these non-parties.

The trial court also found that the Property Agreement did not require husband

to provide wife with the Form 1099s because Paragraph 4.5 stated, "U.S. Treasury Form 1099s shall be issued," but did not indicate which party was responsible for producing the forms. It found that because husband was not a payor or payee on the notes, he could not control the issuance of tax forms. It concluded that since it did not have jurisdiction over Silver Eagle, it could not compel Silver Eagle to provide the forms. It further concluded that because the Property Agreement did not indicate that husband must provide Form 1099s, and because husband was not a payor or payee on the Silver Eagle notes, husband could not control the issuance of Form 1099s, and an order compelling him to provide these forms would be improper.

With respect to the renegotiation of the Note Receivable, the trial court found that because husband was not a payee or payor on the Note Receivable, he could not cause or prevent the renegotiation. The trial court found that husband was not required to provide wife with copies of either the original or the renegotiated note under the terms of the Property Agreement. The trial court also found that ordering husband to produce a copy of the renegotiated note would have the effect of compelling Silver Eagle to provide such a note, which would be improper because the court lacked jurisdiction to do so.

The trial court concluded that paragraphs 8.3 and 10.4 did not support wife's motion because it had no jurisdiction over non-parties and those paragraphs do not compel husband to provide information not in his possession and over which he does not have authority or control. The trial court did not explicitly address wife's request for accounting.

c. *Applicable Provisions of Property Agreement*

Paragraph 4.5 of the Property Agreement provides in full:

4.5 *Silver Eagle Promissory Note.* [Husband] represents and warrants that he is the beneficial owner of a one-half (1/2) interest in the proceeds (principal and interest) of a 10–year promissory note dated December, 2002, between Silver Eagle Distributors, Inc., as Obligor, and Donald C. Musick (hereinafter "Musick"), as Obligee (hereinafter "note receivable"). The principal amount of [husband's] one-half (1/2) interest in the note receivable is approximately $13,500,000.00. Pursuant to the terms of the note receivable, monthly payments of principal and interest are made by Silver Eagle to Musick. Musick, in turn, makes monthly payments to [husband], as a pass-through, equal to one-half (1/2) of the amount of the Silver Eagle payments to Musick.

In addition, by agreement, [husband] is obligated for one-half (1/2) of the amount due from Musick to Silver Eagle on a promissory note (hereinafter "note payable") as a result of loans/advances made to Musick and [husband]; the principal amount of [husband's] one-half (1/2) of the note payable is $1,500,000.00. As with the note receivable, Musick and [husband] are obligated to make monthly payments of principal and interest to Silver Eagle on the note payable.

The parties agree that [husband's] one-half (1/2) interest in the note receivable and in the note payable shall be divided equally between the parties. In this regard, the parties further agree as follows:

(a) [Husband] irrevocably assigns, conveys and transfers to [wife] one-half (1/2) of his rights in and to the proceeds of the note receivable and one-half (1/2) of his financial obligation pursuant to the note payable. Like-

wise, [wife] hereby accepts, as her sole obligation, one-half (1/2) of [husband's] obligations, financial and otherwise, pursuant to the terms of the note payable.

(b) Beginning January 1, 2004, the parties shall each be entitled to one-half (1/2) of all distributions received by [husband] from Silver Eagle via pass-through from Musick. Likewise, the parties shall each be responsible for payment of all amounts of principal and interest due to Silver Eagle from [husband] pursuant to the terms of the note payable. The parties shall each be responsible for one-half (1/2) of all taxes (income or other taxes) and other costs and financial obligations attributable to their one-half (1/2) share of all distributions received. In this regard, U.S. Treasury Form 1099s shall be issued to both parties annually for their one-half (1/2) share of all taxable distributions, and their one-half (1/2) share of all deductible interest expense (if any). Each month, [husband] shall pay to [wife] one-half (1/2) of the amount of the distributions received by [husband] from Musick, promptly upon receipt of said distributions. In addition, [husband] shall provide [wife] with an accounting of the amount of principal and interest received by him under the note receivable and the amount of principal and interest paid under the note payable. [Husband] agrees not to assign, transfer or encumber his portion of the Silver Eagle note without [wife's] prior written consent.

(c) In the event that the Silver Eagle note receivable is prepaid before the end of the current term of the note (*i.e.* the principal balance of the note is paid by Silver Eagle prior to December 1, 2012), then, and in that event only, [husband] shall pay to [wife] the cash sum of $11,000.00 per month for the balance of the term of the note, beginning on the 1st day of the month following the date on which the principal balance of the note is paid and continuing on the 1st day of each month thereafter through and including the last payment on December 1, 2012. Payments made by [husband] pursuant to this paragraph 4.5(c), if any, are intended to be a partial distribution of property and, as such, said payments shall not be taxable to [wife] nor deductible by [husband] for income tax purposes. [Husband's] obligation to make payments to [wife] as above stated shall *only* arise in the event the principal balance of the note is paid prior to December 1, 2012; [husband] shall not have any obligation to make any payments to [wife] in the event of any other occurrence (*i.e.* other than the above stated prepayment) affecting the validity, value, payment or collectibility of the note.

d. *Analysis*

In the Property Agreement, husband warranted that he was the beneficial owner of a one-half interest in the proceeds of the Note Receivable and that "[p]ursuant to the terms of the note receivable," that Silver Eagle made monthly payments to Mr. Musick, and that Mr. Musick, "as a pass-through," made monthly payments of one-half of the amount received to husband. Husband also represented and warranted that "by agreement" he was obligated to repay one-half of the amount due from Mr. Musick to Silver Eagle on the Note Payable. The two notes and any assignments or subsidiary agreements by which husband became a beneficial owner of one-half of the Note Receivable and obligated to pay on the Note Payable were

not before the trial court. However, the representations and warranties in the Property Agreement setting out husband's beneficial ownership interest in the Note Receivable and his obligations on the Note Payable were sufficient to support a reasonable inference that he had possession and control of information and documentation concerning the notes. The trial court erred in concluding that because husband was not named in the Property Agreement as payor or payee on the notes, he had no interest sufficient to control their possession, production, or renegotiation.

The Property Agreement awarded wife one-half of the distributions husband received from Silver Eagle through Mr. Musick. It required husband to pay wife one-half of the distributions received from Mr. Musick each month. It made each party responsible for taxes on each one's one-half share of all distributions, and in Paragraph 4.5(b), it required Form 1099s to be issued to each annually for each one's share:

> The parties shall each be responsible for one-half (1/2) of all taxes (income or other taxes) and other costs and financial obligations attributable to their one-half (1/2) share of all distributions received. In this regard, *U.S. Treasury Form 1099s shall be issued to both parties annually for their one-half (1/2) share of all taxable distributions, and their one-half (1/2) share of all deductible interest expense (if any)* . . . .

(Emphasis added.) Wife alleged that husband had failed to provide Form 1099s to her. The trial court concluded, and husband argues, that the Property Agreement did not require husband to provide Form 1099s to wife, because it only said that the Form 1099s "shall be issued." We disagree.

In interpreting this provision, we must give it a reasonable meaning so that it is not left without function or sense. *Bolton,*

950 S.W.2d at 271. We first examine the failure to specify who was to provide the Form 1099s. Federal tax law controls the determination of who must issue Form 1099s and who is entitled to receive Form 1099s. Neither a court nor a settlement agreement may order someone to assume or be relieved of duties relative to Form 1099s in contravention of federal tax law. Thus, the Property Agreement could not designate who was to provide the Form 1099s.

We next consider how this language may reasonably be interpreted to give it effect in the context of the Property Agreement as a whole. The Property Agreement was designed to divide property interests and income generated by that property, some of which, like the Note Receivable and the Note Payable, entailed ongoing distributions of income or ongoing payment obligations. It was also designed, as reflected in Paragraph 8.2, to make each party responsible for all income taxes on that party's share of the property divided. In this context, a reasonable interpretation of the language in Paragraph 4.5(b) is that it requires the division of the two notes to be structured in such a way that under federal law each party would receive Form 1099s. Since husband's property interests were being divided, it would then be his duty under paragraphs 4.5(b) and 10.4 to execute the paperwork accomplishing the division so that wife would receive her own Form 1099s. Wife's motion alleging this provision in the Property Agreement and her failure to receive Form 1099s stated a claim for relief against husband to divide his interest in such a way that wife would be entitled to Form 1099s. These allegations also raised fact issues about whether wife was receiving Form 1099s and, if not, whether husband had taken all actions in his power to divide his interests so that wife would be entitled to Form 1099s on these distributions, which also precludes judgment on the pleadings.

The Property Agreement also required husband to provide wife with an accounting of the principal and interest *received by him* under the Note Receivable. Wife's motion alleging this duty and husband's failure to honor her request for an accounting was sufficient to state a claim for this relief. *See Atkinson*, 185 S.W.3d at 782.

In addition, the Property Agreement required husband to provide wife with an accounting of the amount of principal and interest paid on the Note Payable. Wife's motion alleging this duty and that husband failed to provide her with documentation of the repayment of her share of the Note Payable are sufficient to state a claim for relief under this provision of the Property Agreement. *See id.*[4]

■ Wife also alleged that husband had renegotiated the Note Receivable, in violation of the Property Agreement, and had refused to provide her with a copy of the renegotiated note. Paragraph 4.5(b) of the Property Agreement prohibited husband from encumbering his portion of the note:

> "[Husband] agrees not to assign, transfer or encumber his portion of the Silver Eagle note without [wife's] prior written consent."

The award to wife of an interest in husband's portion of the note made husband a fiduciary of wife's share of the note. *See McCreary*, 954 S.W.2d at 451. As a fiduciary, he was required to fully inform wife of all facts relating to the subject matter of the trust which were in his knowledge and which were material for her to know for the protection of her interests. *Ramsey*, 914 S.W.2d at 388; *Fletcher*, 480 S.E.2d at 491; *Dryden*, 52 N.W.2d at 746; RESTATEMENT (SECOND) OF TRUSTS, *supra*, at § 173 cmt. c. This would include advising her of a renegotiation of the note. Wife was not required, as husband argues, to allege when the Note Receivable was renegotiated or how the renegotiation affected the interest in the note, as this was all information within husband's control. *See* 61A AM.JUR.2D *Pleading* § 80 (1981); 71 C.J.S. *Pleading* § 9 (2000). Wife's motion sufficiently alleged facts stating a claim for an order requiring husband to provide her with any documentation, including the renegotiated Note Receivable, evidencing a change in the terms of the Note Receivable. The trial court erred in entering judgment on the pleadings based on its conclusion that wife had not stated a claim for a copy of the renegotiated Note Receivable.

Finally, wife's motion did not seek relief or performance from Silver Eagle or Mr. Musick. The trial court erred in entering judgment on the pleadings based on its conclusion that it did, and that, as a result, it had no jurisdiction.

*Conclusion*

For all of the above reasons, the trial court erred in granting judgment on the pleadings in husband's favor. The judgment of the trial court is reversed and the case is remanded.

CLIFFORD H. AHRENS and NANNETTE A. BAKER, JJ., concur.

---

4. Husband argues that this issue is moot because certain documents he provided during discovery satisfy his duty to provide an accounting. This argument also calls for a resolution of wife's claim on the merits by asking the court to consider matters outside wife's motion. As we previously stated, the issue is whether, giving wife the benefit of all reasonable inferences from the facts alleged in her motion, wife stated a claim for relief, not whether her theory would ultimately be viable. *See A.R.H.*, 876 S.W.2d at 688.